Mary Anna FREED, Plaintiff
and Appellee,

v.

Donald C. FREED, Defendant
and Appellant.

Civ. No. 890305.

Supreme Court of North Dakota.

April 12, 1990.

Pamela J. Hermes (argued) and Jerry O. Brantner of Vogel, Brantner, Kelly, Knutson, Weir & Bye, Ltd., Fargo, for plaintiff and appellee.

Jonathan T. Garaas of the Garaas Law Firm, Fargo, for defendant and appellant.

VANDE WALLE, Justice.

Donald C. Freed appealed from a judgment and decree of divorce entered in the district court for Cass County. On appeal, Donald contends that the findings of fact of the trial court were clearly erroneous resulting in an improper child custody award and an inequitable distribution of property. We affirm. Mary Anna Freed has sought attorney's fees for the appeal pursuant to NDCC § 14–05–23. We remand for a determination of attorney's fees by the trial court.

Donald C. Freed and Mary Anna Freed were married in West Fargo, North Dakota, on May 25, 1968. The couple resided in Horace, North Dakota. Mary Anna received a degree in elementary education from Moorhead State University and is employed as a teacher by the West Fargo School District. Donald is a self-employed contractor, and is the owner and operator of a trailer court in Horace. Two children were born to Donald and Mary Anna: Scott Allen Freed, born November 3, 1974, and Ericka Leone Freed, born May 27, 1980.

On September 17, 1987, Mary Anna initiated an action for divorce on the basis of irreconcilable differences. A trial in this divorce proceeding was held in July of 1989 in the district court for Cass County. The divorce judgment placed custody of Scott with Donald, and custody of Ericka with Mary Anna. Both Donald and Mary Anna were granted the right to reasonable visita-

tion. The judgment also divided the property of the parties.

On appeal, Donald contends that the trial court erred in splitting custody of Scott and Ericka, and asserts that he should have been awarded custody of both children. Donald also argues that the trial court made an inequitable division of the couple's property and debts. We consider Donald's arguments separately.

## CHILD CUSTODY

■ The standard to be followed by trial courts in making initial child-custody determinations is "the best interests and welfare of the child." NDCC § 14–09–06.1. *See also Worden v. Worden*, 434 N.W.2d 341 (N.D.1989); *Wright v. Wright*, 431 N.W.2d 301 (N.D.1988). The trial court must consider and evaluate "all factors affecting the best interests and welfare of the child" enumerated in NDCC § 14–09–06.2.[1] *See Roen v. Roen*, 438 N.W.2d 170 (N.D.1989). Furthermore, the trial court is vested with substantial discretion in matters of custody and in the determination of what is in the best interests of a child. *Dizayee v. Dizayee*, 414 N.W.2d 606 (N.D.1987); *Gorsuch v. Gorsuch*, 392 N.W.2d 392 (N.D.1986).

■ It is well settled that a trial court's determinations on matters of child custody are treated as findings of fact. *Dinius v. Dinius*, 448 N.W.2d 210 (N.D.1989); *Worden v. Worden, supra; Bashus v. Bashus*, 393 N.W.2d 748 (N.D.1986). We do not set aside the findings of the trial court on appeal unless they are clearly erroneous. Rule 52(a), NDRCivP; *Davis v. Davis*, 448 N.W.2d 619 (N.D.1989); *Miller v. Miller*, 305 N.W.2d 666 (N.D.1981). A trial court's findings of fact are presumptively correct, *Branson v. Branson*, 411 N.W.2d 395 (N.D.1987), and are clearly erroneous only when the reviewing court, based upon the entire evidence, is left with a definite and firm conviction that a mistake has been made, *Dinius v. Dinius, supra; Bashus v. Bashus, supra; Ebertz v. Ebertz*, 338 N.W.2d 651 (N.D.1983); *Bergstrom v. Bergstrom*, 296 N.W.2d 490 (N.D.1980). Our scope of review is properly limited by the "clearly erroneous" rule because the trial court, having had the opportunity to observe the demeanor and credibility of the witnesses, is in a much better position to ascertain the true facts than an appellate court which must rely on a cold record. *Dinius v. Dinius, supra; Dizayee v. Dizayee, supra; Bashus v. Bashus, supra.*

In the instant case, the trial court ordered a custody investigation and report concerning custodial arrangements for the Freed children. *See* NDCC § 14–09–06.3. Jared Simonson, a juvenile probation officer with the Cass County juvenile court, was appointed as the custody investigator. Simonson subsequently drafted and filed a copy of his report with the trial court. Simonson's report indicated that Donald was a self-admitted alcoholic who voluntarily completed out-patient counseling at the Crossroads Treatment Center in 1986. However, the report expressed concern that Donald was not attending Alcoholics Anonymous meetings, and that Donald was not currently involved in any other type of counseling or program for his alcoholism.[2] Simonson's report also noted that Mary Anna had a "propensity to become angry when frustrated," and that Mary Anna was involved in three incidents of physical confrontation with Scott either during arguments or when Scott had directed abusive language towards her. The report stated that "regardless of the reason[s] underlying it," Mary Anna and Scott's relationship is "estranged." Simonson also evaluated each of the "best interest" factors enumer-

1. In 1989, the North Dakota Legislature modified § 14–09–06.2 to include additional factors. The effective date of the amendments to § 14–09–06.2 was April 7, 1989. Because the action in the instant case commenced before the effective date of the legislative amendments, we apply the former version of the statute. *See State v. Rohrich*, 450 N.W.2d 774, 775–76 n. 1 (N.D.1990) [applying former version of sentencing statutes on appeal]; *Riverview Place, Inc. v.*

*Cass County*, 448 N.W.2d 635, 638 n. 2 (N.D. 1989) [applying former version of NDCC § 11–11–43 on appeal].

2. During trial, Donald testified that he "probably" is an alcoholic, but that he could cope with his alcoholism without involving programs such as Alcoholics Anonymous.

ated in § 14–09–06.2. While noting each of the aforementioned concerns, Simonson generally rated Donald and Mary Anna equally with regard to most of the factors. However, Simonson's evaluation did indicate that Scott expressed a strong preference to live with his father, while Ericka was unable to express any preference. Simonson recommended to the court that Donald be awarded custody of Scott, while Mary Anna should be awarded custody of Ericka. During the trial, Simonson's testimony expanded on the recommendation in the report. Simonson testified about his great concern over Donald's alcoholism and lack of an aftercare recovery program. Simonson stated that if Scott had not expressed such a strong preference to live with his father, he would have recommended that both children be placed with Mary Anna.

At the conclusion of the trial, the district court made a number of oral findings from the bench and later entered written findings regarding child custody. While stating that it considered all of the child-custody factors set forth in § 14–09–06.2, the district court found that Donald was a self-admitted alcoholic; that his drinking had affected the family's structure, income, and stability; and that he was not involved in a continuing-recovery program. The oral and written findings also state that Mary Anna had been involved in prior physical confrontations with Scott and that she reacts to stress in an "inappropriate" manner. However, the trial court in its oral comments stated that it had no reason to believe that there was any prolonged physical abuse by Mary Anna. The district court's findings also indicate that Scott had expressed a preference towards living with Donald, and that he had difficulty in his relationship with Mary Anna. From these findings, the trial court concluded that the interests of the children dictate that Donald receive custody of Scott, while Mary Anna receive custody of Ericka. The court also concluded that both Donald and Mary Anna should be granted reasonable visitation.

■ On appeal, Donald contends that the trial court erred in its findings and should

have awarded him custody of both Scott and Ericka. Donald's first argument is that the trial court's findings improperly ignored the evidence concerning Mary Anna's physical abuse, while overemphasizing his alcoholic status. We disagree. The findings entered by the district court clearly demonstrate that it took into account Mary Anna's "inappropriate" physical confrontations with Scott, but discounted them as situational and not prolonged in nature. Such findings appear to rest upon Simonson's custody report, and Mary Anna's testimony which indicated that the three incidents of confrontation occurred mainly in reaction to arguments with Scott, or in reaction to abusive language from Scott. Furthermore, a parent's inability to control his or her alcoholism is a highly relevant factor that a trial court can properly consider in child-custody determinations. *See, e.g., Cross v. Cross*, 374 N.W.2d 346 (N.D. 1985).

■ In his second argument, Donald notes that we do not look with favor on separating siblings in custody cases, and that separating Scott and Ericka was not in their best interests nor justified by the facts of this case. Initially, we note that this Court has not prohibited the separation of children in all custody disputes, and has in fact approved it where the trial court has found split custody desirable. *See Gravning v. Gravning*, 389 N.W.2d 621 (N.D. 1986); *Willi v. Willi*, 335 N.W.2d 790 (N.D. 1983); *Henry v. Henry*, 77 N.D. 845, 46 N.W.2d 701 (N.D.1950). In the instant case, the trial court indicated strong doubts about Donald's past alcohol problems and lack of continuing treatment, but recognized that placing custody of Scott with Mary Anna would be unproductive due to their strained relationship and Scott's strong preference for remaining with his father. Additionally, this case contains several circumstances lessening any negative effect of a split-custody determination including a fairly large age difference between the children, the fact that Scott is relatively close to the age of emancipation, the fact that Donald's residence in Horace and Mary Anna's residence in West Fargo are only a few miles apart, and the rather

liberal visitation granted by the court. *See generally* Annotation, *Child Custody: Separating Children By Custody Awards to Different Parents,* 67 A.L.R.4th 354 (1989) [enumerating various factors which permit and mitigate split-custody decisions by courts]. Under these circumstances, we do not believe that the trial court acted improperly in splitting custody of the children between the parents.

■ Donald's final argument is that the trial court's written custody findings only referred to the "interests" of children, rather than the exact words "best interests" of the children. However, in *Deforest v. Deforest,* 228 N.W.2d 919, 923 n. 1 (N.D.1975), we noted that the exact words "best interests" of the child need not be slavishly adhered to by a trial court in its findings. Moreover, the trial court in the instant case expressly made reference to the children's "best interests" during its oral statements at the conclusion of the case. *See Dizayee v. Dizayee, supra* [although the trial court did not expressly state in its findings that its custody decision was in the best interests of the child, its decision was not clearly erroneous where its oral comments indicated that the court focused on the proper issue]. We conclude that the trial court applied the proper standard in determining custody.

From our review of the record and transcripts of this action, we are not left with a definite and firm conviction that a mistake was made regarding the custody of the Freed children, nor do we believe that the district court's child-custody findings are clearly erroneous.

## PROPERTY DIVISION

■ A trial court's determinations on matters of property division are also treated as findings of fact subject to the "clearly erroneous" standard of Rule 52(a), NDRCivP. *Heggen v. Heggen,* 452 N.W.2d 96 (N.D.1990); *Bader v. Bader,* 448 N.W.2d 187 (N.D.1989). Under the "clearly erroneous" standard, we will reverse only if there is no evidence to support a finding or if, upon review of the entire evidence, we are left with a definite and firm conviction that a mistake has been made. *Heggen v. Heggen, supra; Hedin v. Hedin,* 370 N.W.2d 544 (N.D.1985).

■ The objective of a property division is to make an equitable distribution of the parties' property. *Wastvedt v. Wastvedt,* 371 N.W.2d 142 (N.D.1985). In order to make an equitable distribution, the trial court must first determine the net worth of the parties' property. *Graves v. Graves,* 340 N.W.2d 903 (N.D.1983); *VanRosendale v. VanRosendale,* 333 N.W.2d 790 (N.D.1983). The trial court must consider all of the real and personal property accumulated by the parties as part of the marital estate, regardless of its source. *Fleck v. Fleck,* 427 N.W.2d 355 (N.D.1988); *Schmidt v. Schmidt,* 325 N.W.2d 230 (N.D. 1982). There is no absolute requirement that the trial court place a value upon the individual items making up the net worth of the parties. *Jondahl v. Jondahl,* 344 N.W.2d 63 (N.D.1984). Once the net worth of the marital estate has been determined, the trial court is to distribute the property among the parties utilizing the various guidelines established in *Ruff v. Ruff,* 78 N.D. 775, 52 N.W.2d 107 (1952), and *Fischer v. Fischer,* 139 N.W.2d 845 (N.D.1966).[3] The trial court need not make specific findings with regard to each of the *Ruff–Fischer* guidelines, *Blowers v. Blowers,* 377 N.W.2d 127 (N.D.1985), and the property division need not be equal to be considered an equitable distribution, *Volk v. Volk,* 404 N.W.2d 495 (N.D.1987); *Routledge v. Routledge,* 377 N.W.2d 542 (N.D. 1985).

In the instant case, the district court entered numerous findings of fact regard-

---

**3.** These guidelines allow the trial court, in making a property distribution, to consider the respective ages of the parties to the marriage; their earning abilities; the duration of the marriage and the conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical conditions; their financial circumstances as shown by the property owned at the time; its value and income-producing capacity, if any, and whether it was accumulated or acquired before or after the marriage; and such other matters as may be material. *Volk v. Volk,* 376 N.W.2d 16, 18 n. 2 (N.D.1985).

ing the property division including the age, health, education, earning ability, and expenses of the parties. The court found that the parties have total marital assets approximating $247,000, total marital debts approximating $114,000, and a resulting net marital estate of $133,000. The findings further indicate that each party had premarital property, and that the court considered such property in its division. Moreover, the trial court found that the major marital assets consisted of the family's Horace residence, two vacant lots in Horace, the Sheyenne Trailer Court, and the Brink's property in Horace. The court found that Donald desired to retain these parcels of real property, and that Mary Anna expressed no interest in obtaining them. From these findings of fact, the trial court ordered that Mary Anna receive numerous specified pieces of personal property, and that Donald receive all of the remaining personal and real property of the marital estate. In order to make an equitable division, the court further ordered Donald to pay Mary Anna the sum of $45,000 over a ten-year period.

■ Donald's first argument regarding the property division is that the trial court erred in arriving at net marital estate value of $133,000. Donald notes that the trial court's net valuation of $133,000 did not equal, or fall within the range of, either his or Mary Anna's net marital estate calculations. However, in arriving at its net marital estate determination, the trial court did not rely exclusively on either party's figures. Rather, it is apparent that the trial court relied on Mary Anna's calculation of the total marital assets, which approximated $247,000, and Donald's calculation of total marital debts, which approximated $114,000. We do not believe that it was clearly erroneous for the trial court to give greater weight to Mary Anna's valuation of assets and to Donald's valuation of debts. The trial court, which had the opportunity to observe the demeanor and credibility of the parties, is in a far better position than an appellate court in ascertaining the true facts regarding the property's value. *See Jondahl v. Jondahl, supra; Nastrom v. Nastrom,* 284 N.W.2d 576 (N.D.1979).

■ In his second argument, Donald contends that the trial court's property division and debt allocation were erroneous. Again, utilizing Mary Anna's valuation of assets and Donald's valuation of debts, Mary Anna received numerous pieces of personal property with a net value slightly exceeding $15,000, while Donald received the real property and remaining personal property of the marital estate with a net value slightly exceeding $118,000. In order to make an equitable division of the property, the trial court ordered Donald to pay Mary Anna $45,000 over a ten-year period, thereby resulting in final property award to Mary Anna of approximately $60,-000, and a final property award to Donald of approximately $73,000. Donald has not convinced us that a mistake was made with regard to the trial court's division of property. *Heggen v. Heggen, supra.* Moreover, we do not agree with Donald's contention that the trial court unfairly allocated a large portion of the marital debt to him. Most of the debt in controversy was debt which Donald agreed to assume because it related to his business, or was related to the real property acquired by Donald in the property division. *See, e.g., Branson v. Branson,* 411 N.W.2d 395 (N.D.1987) [property division was not erroneous when defendant received farmland valued at $580,725 and farm-connected debt of $606,149].

■ In his final argument, Donald contends that the trial court erred in failing to give him credit for approximately $28,000 worth of assets which he claims to have brought into the marriage. As previously mentioned, the trial court must consider all of the real and personal property accumulated by the parties as part of the marital estate, regardless of the source. *Fleck v. Fleck,* 427 N.W.2d at 359. While circumstances such as the premarital acquisition of property can be considered in distributions under the *Ruff–Fischer* guidelines, they are not rules of law which prevent an equitable distribution of marital property. *Id.* In short, this Court has never decreed that the property brought into a marriage

by a party be irrevocably set aside to that party, nor has Donald cited any authority to that effect. Rather, we have indicated that premarital acquisition is only one of several factors to be considered. *E.g., Schmidt v. Schmidt, supra.* In the instant case, the trial court's findings of fact specifically indicate that each party had premarital property, and that the court considered such property in making its distribution. It is apparent that other factors such as the length of the marriage, the needs of the parties, and the desires of the parties to retain certain properties were, under the facts of this case, deemed more significant by the trial court. We perceive no error in these findings.

From our review of the record, we do not believe that that district court's property division was clearly erroneous. Accordingly, the judgment and decree of divorce entered by the district court is affirmed.

## ATTORNEY'S FEES

 Mary Anna has made a motion for attorney's fees pursuant to Rule 38, NDRAppP. Because we do not believe that Donald's appeal was frivolous, we deny Mary Anna's Rule 38 motion. Alternatively, Mary Anna sought an award for attorney's fees in this appeal pursuant to NDCC § 14-05-23. Mary Anna contends that such fees will result in a substantial reduction in the value of the property she received pursuant to the judgment and decree of divorce. In *Roen v. Roen,* 438 N.W.2d 170, 174 (N.D.1989), we noted that:

> "The trial court and this court have concurrent jurisdiction to award attorney's fees on appeal. NDCC § 14-05-23. We prefer that the trial court determine the amount of attorney's fees for a spouse on a divorce appeal."

Consequently, we remand to the trial court for a determination of whether Mary Anna is entitled to attorney's fees and, if so, the amount thereof.

ERICKSTAD, C.J., GIERKE and MESCHKE, JJ., and VERNON R. PEDERSON, Surrogate Judge, concur.

VERNON R. PEDERSON, Surrogate Judge, sitting in place of Levine, J., disqualified.