2008 ND 54

**Heidi Lee NIEMANN, n/k/a Heidi Lee Wolf, Plaintiff and Appellee**

v.

**Lyle Thomas NIEMANN, Defendant and Appellant.**

**No. 20060332.**

Supreme Court of North Dakota.

March 20, 2008.

4

Alan M. McDonagh, Carter McDonagh, P.L.L.P., Grand Forks, ND, for plaintiff and appellee.

Darcie M. Einarson, Einarson Law Office, P.C., Grafton, ND, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Lyle Niemann appealed from a district court order denying his motion for change of custody and an order denying his motion for reconsideration. We reverse and remand for further proceedings in accordance with this opinion.

## I.

[¶ 2] In 1998, Lyle Niemann and Heidi Wolf divorced and Heidi Wolf was granted custody of their son and daughter. Both remarried. Lyle Niemann sought a change of custody in 2001 but his motion was dismissed without a hearing. By agreement in June 2004, their daughter moved in with Lyle Niemann. In August 2005, Lyle Niemann brought a motion to gain custody of their son and the district court ordered an evidentiary hearing.

[¶ 3] At a June 2006 pretrial conference, the district court limited each party to two hours to present their case. Counsel for both sides objected. The parties, prior to the hearing, stipulated to the physical change in custody of their daughter from Heidi Wolf to Lyle Niemann. However, the parties could not agree on a custodial arrangement for their son.

[¶ 4] In support of his motion for change of custody, Lyle Niemann filed affidavits and submitted other documents which he asserted supported his allegations that 1) his son witnessed domestic violence in Heidi Wolf's home; 2) his son witnessed alcohol abuse by Heidi Wolf, her husband and their friends at the Wolf residence; 3) Social Services was called to the Wolf home on several occasions; 4) his son's education had suffered because of Heidi Wolf's failure to do homework with him and provide structure; and 5) his son

witnessed arguments, swearing and inappropriate language at the Wolf household. Heidi Wolf countered with affidavits and other evidence asserting 1) there is no domestic violence in her home; 2) their daughter made up lies in her attempt to live with her father and due to her dislike of Heidi Wolf's new husband; 3) Heidi Wolf helps her son with his homework though she does have trouble getting him to school on time; and 4) there is no alcohol abuse in her home.

[¶ 5] A custody investigator was appointed and interviewed Lyle Niemann, Heidi Wolf, their spouses, the two children and several friends and family members of both parties. The custody investigator recommended in her affidavit and at the hearing that custody of the son be awarded to Lyle Niemann, citing concerns about domestic violence, alcohol abuse, lack of structure and arguments with vulgar, inappropriate language in front of the children at the Wolf home.

[¶ 6] The domestic violence concerns stem from two alleged incidents. First, in June 2002, the daughter spoke with a social worker at her school about a fight between her mother and stepfather. According to the daughter, after Heidi Wolf locked her keys in her car, her husband yelled and swore at her in front of the children, then "trashed" the house when they arrived home. The daughter stated she wanted to call the police and her stepfather chased them when they left the house.

[¶ 7] The second incident occurred in May 2005, when the children indicated to their school social worker that their stepfather came home drunk, yelled, swore and pushed their mother. A report was filed with Social Services. The custody investigator interviewed several of the Wolfs' friends regarding the incident. Two

friends said Heidi Wolf and her husband were "in each other's faces" and yelling but saw no physical violence. A third friend said he took his child and Heidi Wolf's son out of the house and was told by Heidi Wolf's husband to leave. The parties' daughter said she saw her stepfather yell, swear and push her mother. She said she grabbed her half-brother and snuck out of the house through a construction area.

[¶8] Heidi Wolf admits she left with the children that night and her husband admitted to yelling, swearing and name-calling when angry. Heidi Wolf said she left the confrontation rather than dealing with it. She denied any domestic violence but admitted to the involvement of Social Services. A Social Services note indicates the case was closed after Heidi Wolf said she was leaving her husband and would obtain counseling for herself and the children. Heidi Wolf never obtained such counseling and disputes Social Service's note.

[¶9] Witnesses at the hearing on July 31, 2006, included the parties, their daughter, their spouses, two former teachers of their son and the custody investigator. The judge, ruling from the bench, found no material change of circumstances and denied Lyle Niemann's motion. A subsequent motion for reconsideration was also denied. Lyle Niemann argues the district court was clearly erroneous in finding no material change of circumstances present to warrant a change of custody. He also argues the district court abused its discretion in limiting his case presentation to two hours.

## II.

[¶10] A court may modify a prior custody order after the two-year period following the date of entry of an order establishing custody if the court finds either a) on the basis of facts that have arisen since the prior order or which were unknown to the court at the time of the prior order, a material change has occurred in the circumstances of the child or the parties, and b) modification is necessary to serve the best interest of the child. N.D.C.C. § 14–09–06.6(6). The two-step test is whether there has been a material change of circumstances, and if so, whether a custody change serves the child's best interests. *Id.* A district court decision to change custody is a finding of fact subject to a clearly erroneous standard of review. *Kelly v. Kelly,* 2002 ND 37, ¶13, 640 N.W.2d 38.

[¶11] A finding of fact is clearly erroneous if induced by an erroneous view of the law, if no evidence supports it, or if the reviewing court, after reviewing the entire evidence, is left with a definite and firm conviction a mistake has been made. *Burns v. Burns,* 2007 ND 134, ¶9, 737 N.W.2d 243 (citation omitted). Under the "clearly erroneous" standard of review, we do not reassess evidence or credibility of witnesses nor retry a custody case nor substitute our judgment for a district court's decision merely because we might have reached a different result. *Id.* A choice between two permissible views of the weight of the evidence is not clearly erroneous and our deferential review is especially applicable for a difficult child custody decision involving two fit parents. *Id.*

### A. Material Change of Circumstances

[¶12] A material change of circumstances includes important new facts unknown at the time of the prior custodial decree. *Kelly,* at ¶17. A material change of circumstances can occur if a child's present environment may endanger the child's physical or emotional health or impair the child's emotional development.

*Id.* Improvements in a non-custodial parent's situation, coupled by a general decline in the condition of the children with the custodial parent over the same period may constitute a significant change in circumstances. *Kelly,* at ¶ 20. The party seeking to modify the custody order bears the burden of proof. N.D.C.C. § 14–09–06.6(8).

[¶ 13] Lyle Niemann argues the incident in May of 2005 was domestic violence and constitutes a material change of circumstances. Section 14–07.1–01, N.D.C.C., defines domestic violence to include "physical harm, bodily injury, sexual activity compelled by physical force, assault, or the infliction of fear of imminent physical harm, bodily injury, sexual activity compelled by physical force, or assault, not committed in self-defense." The district court stated, "The court does not find that credible domestic violence or a pattern of domestic violence exists." But the language used by the district court suggests the domestic violence must rise to the level of the standard used to invoke the domestic violence presumption in N.D.C.C. § 14–09–06.2(j) for purposes of determining whether a material change of circumstances occurred. Under that section the presumption is invoked if the court finds credible evidence that domestic violence has occurred and there exists one incident of domestic violence resulting in serious bodily injury, or "there exists a pattern of domestic violence within a reasonable time proximate to the proceeding." *Id.*

[¶ 14] A court does not reach the consideration of the best interest factors, which include the domestic violence presumption, unless the court first finds a significant change in circumstances. *Anderson v. Hensrud,* 548 N.W.2d 410, 413 (N.D.1996). If domestic violence exists under the definition in N.D.C.C. § 14–07.1–01 but does not rise to the level nec-essary to invoke the presumption contained in. N.D.C.C. § 14–09–06.2(j), there may nevertheless be a change of circumstances which may justify a change in custody under N.D.C.C. § 14–09–06.6. *Hurt v. Hurt,* 2001 ND 13, ¶ 10, 621 N.W.2d 326 ("Evidence of domestic violence which does not trigger the presumption, nonetheless, remains one of the best interest factors to be considered by the trial court."). Insofar as the district court believed there must be serious bodily injury or a pattern of domestic violence to justify a change in custody, we conclude the district court made a mistake of law by applying the standard necessary to invoke the domestic violence presumption to determine whether a change in circumstances justifying a change in custody occurred.

[¶ 15] The incident in May 2005 comports with the definition of domestic violence. By choosing the term "family or household member" when defining domestic violence in N.D.C.C. § 14–07.1–01, the legislature intended that courts presume that any domestic violence negatively impacts the best interests of the children. *Hensrud,* at 413 (citation omitted). Domestic violence is not confined to instances where the parent is the direct victim of the violence. *Id.* Even if Heidi Wolf did not fear imminent physical harm during the fight with her husband, it is obvious the children were afraid. The parties' son was removed from the house by his stepfather's friend. Their daughter's fear of imminent physical harm is evident in her testimony regarding that night and in her current refusal to have contact with her stepfather.

[¶ 16] The new split-custody arrangement also appears to be a material change in circumstances. After living together with Heidi Wolf since the divorce in 1998, the children were separated when the daughter went to live with Lyle Niem-

ann in 2005. Although split custody is not flatly prohibited, as a general rule we do not look favorably upon separating siblings in custody cases. *Leppert v. Leppert*, 519 N.W.2d 287, 291 (N.D.1994). This Court has approved split-custody cases where it was determined by the trial court to be desirable. *Freed v. Freed*, 454 N.W.2d 516, 519 (N.D.1990).

[¶ 17] In the *Freed* case, this Court upheld a split-custody arrangement where there was a large age difference between the children. Here, there is only a three-year age difference between the children. Further, the daughter testified that she often babysat her brother. Also, in the *Freed* case the parents' homes were only a few miles apart while the parties in this case live farther apart. There was a rather liberal visitation arrangement in the *Freed* case but that is not the case here.

### B. Best Interest Analysis

[¶ 18] Lyle Niemann argues the language of the district court order suggests the district court went through the best interest analysis and found in favor of him. The judge stated in his ruling from the bench, "If this was first round, Lyle would get custody." However, in a best interest analysis, the trial court's findings of fact should be stated with sufficient specificity to enable us to understand the factual basis for the court's decision. *Molitor v. Molitor*, 2006 ND 163, ¶ 6, 718 N.W.2d 13. There are not sufficient findings of fact in the record regarding the best interest analysis to conclude the district court found in favor of Lyle Niemann on this part of the test.

### III.

[¶ 19] Lyle Niemann also argues the trial court abused its discretion in limiting the parties to two hours within which to present evidence at the hearing. A district court "has broad discretion over the conduct of a trial or hearing, including limitations on the number of witnesses." *Burns v. Burns*, 2007 ND 134, ¶ 7, 737 N.W.2d 243 (citation omitted). A district court abuses its discretion when it acts in an arbitrary, unconscionable, or unreasonable manner, when its decision is not the product of a rational mental process by which the facts of the record and law relied upon are stated and considered together for the purpose of achieving a reasonable determination, or when it misinterprets or misapplies the law. *Id.*

[¶ 20] The parties were notified in advance of the time limitation. Both sides had two hours to present their case but the district court did not limit the number of affidavits and stipulations the parties could make, evidenced by the numerous affidavits found in the record. We conclude the district court did not abuse its discretion in limiting the parties to two hours within which to present their case. However, the trial court may receive additional evidence and allow additional time on remand.

### IV.

[¶ 21] We reverse and remand for further proceedings in accordance with this opinion.

[¶ 22] CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.

MARING, Justice, dissenting in part and concurring in part.

[¶ 23] I respectfully dissent from parts I and IIA. I would affirm the order of the trial court in its entirety.

[¶ 24] On August 11, 2005, Lyle Niemann moved for change of custody to establish him as the custodial parent of both of the parties' minor children and not just his son as the majority states. The Court found a prima facie case had been estab-

lished based upon the fact that the daughter had resided with the father, Lyle Niemann, for more than one year. An evidentiary hearing was scheduled and held July 31, 2006. Prior to the hearing, the parties stipulated to the change in the physical custody of the minor daughter from Heidi Wolf to Lyle Niemann. Therefore the only custody issue before the trial court was whether there should be a change in the custodial arrangement for the parties' minor son.

[¶ 25] The record indicates that Lyle Niemann moved to change custody previously on July 25, 2001. In 2001, Lyle Niemann alleged in his affidavit that Heidi Wolf had been remarried to Vance Wolf; that Vance Wolf and Heidi Wolf were having keg parties and drinking excessively; and that the minor children were abused emotionally and physically by Vance Wolf and neglected by Heidi Wolf. Both parties stipulated to have the issues determined by the court without hearing on August 2, 2001. The trial court held that Lyle Niemann had not established a prima facie case for an evidentiary hearing and denied his motion on October 19, 2001. The relevant inquiry is whether there has been a significant change in circumstances since 2001.

Section 14–09–06.6(6), N.D.C.C., provides:

> The court may modify a prior custody order after the two-year period following the date of entry of an order establishing custody if the court finds:
>
> a. On the basis of facts that have arisen since the prior order or which were unknown to the court at the time of the prior order, a material change has occurred in the circumstances of the child or the parties; and
>
> b. The modification is necessary to serve the best interest of the child.

[¶ 26] For the purpose of a motion to modify custody, a material change in circumstances is defined as important new facts unknown to the court at the time of the prior custody order. *Kelly v. Kelly,* 2002 ND 37, ¶ 17, 640 N.W.2d 38.

[¶ 27] I disagree with the majority's statement of the "two-step" test. The statute specifically requires a material change in the circumstances of the child or the parties and that "modification is *necessary* to serve the best interest of the child." N.D.C.C. § 14–09–06.6(6)(b) (emphasis added); *see Kelly,* 2002 ND 37, ¶ 44, 640 N.W.2d 38 (Maring, J., concurring). I also disagree with the majority's implication that the trial court misapplied or misapprehended the law with regard to domestic violence. The trial court considered the mother Heidi Wolf's version of what happened in May 2005 and the minor daughter's version and found the mother's explanation credible. In the trial court's September 20, 2006, Order Denying Motion for Reconsideration, the court stated:

> This incident did not rise to the level of domestic violence but rather is an isolated domestic disagreement. While such disagreements and conduct should be avoided, it surely is not the basis for a material change of circumstances.

In the parties' Stipulation to Correct and Supplement the Record, the trial court's findings included a sentence left out by the majority:

> *If there is no domestic violence, and only strong words, that is not good, but the incidents in 2002 and then in 2005 don't rise to the level of domestic violence as we recognize it.* The court does not find that credible domestic violence or a pattern of domestic violence exists.

(Emphasis added.) This Court has never held that loud words or domestic disagreements amount to domestic violence.

[¶ 28] The trial court did not find any credible evidence of domestic violence. It did not find "physical harm, bodily injury, sexual activity compelled by physical force, assault, or the infliction of fear of imminent physical harm, bodily injury, sexual activity compelled by physical force, or assault, not committed in self-defense, on the complaining family or household members." *See* N.D.C.C. § 14–07.1–01(2).

[¶ 29] The majority makes a finding that the testimony of the daughter is evidence of the daughter's fear of imminent physical harm. The daughter said in her affidavit about the incident in May 2005, "It was really scary." In her testimony, she said she was afraid of Vance Wolf and when asked why she said, "[h]e just scares me." There is no evidence she was in fear of imminent physical harm, and the trial court did not make any such finding. The majority is reweighing the evidence, thereby ignoring precedent and applying a de novo standard of review. This Court has held that when two parties present conflicting testimony on issues of fact, we will not redetermine the trial court's findings based upon that testimony. *Roberson v. Roberson*, 2004 ND 203, ¶ 10, 688 N.W.2d 380. Here, the trial court found the mother's version of what occurred credible and impliedly did not find the testimony of the daughter that there was physical violence credible.

[¶ 30] Although the majority is correct that we have held that domestic violence does not need to be directed to a child to have a harmful effect on the child, there is no finding of domestic violence in this case, only a loud and strongly worded domestic disagreement. Such a finding is not a material change in circumstances necessitating a modification of custody in the best interest of the minor son, who was the only child left at issue.

[¶ 31] The majority, at ¶ 16, goes on to find "the new split-custody arrangement also appears to be a material change in circumstances" as a matter of law. The parties stipulated to this split after the parties' minor daughter stated a preference to live with her father. If this amounts to a material change as a matter of law, it will discourage parties from settling custody disputes such as this. There is little, if any, evidence in this record about the relationship between the minor daughter and the minor son. What is there is lacking in detail and substance. There is no evidence they spend a substantial amount of time together or share any activities or interests. The trial court specifically found in its September 5, 2006, Order Denying Defendant's Motion to Modify Custody:

> 2. [Lyle Niemann] has failed to show a significant change in circumstances relating to the following areas: ... (5) the relationship between [the minor daughter] and [the minor son] to justify an analysis of the best interest of the child factors under North Dakota Century Code Section 14–09–[0]6.2.

Again this Court is reweighing evidence and second-guessing the trial court's credibility determinations. The trial court's order is not clearly erroneous. I respectfully dissent and would affirm the order in its entirety.

[¶ 32] Daniel J. Crothers