2009 ND 155

**Darin G. FRUEH, Plaintiff and Appellant**

v.

**Melissa A. FRUEH, n/k/a Melissa Hoheisel, Defendant and Appellee.**

No. 20080231.

Supreme Court of North Dakota.

Aug. 27, 2009.

Michael S. McIntee, Towner, N.D., for plaintiff and appellant.

Rebecca C. Graves, Bismarck, N.D., for defendant and appellee.

SANDSTROM, Justice.

[¶ 1] Darin Frueh appeals from a district court order denying his motion for a change of custody. We conclude the district court relied upon impermissible factors in deciding whether a change in custody was in the child's best interests, and we reverse and remand.

I

[¶ 2] Darin Frueh and Melissa Frueh, now known as Melissa Hoheisel, were married in 1992 and had one child together in December 1994. They divorced in January 2004. The parties stipulated to custody and visitation of the child, and the stipulation was incorporated into a judgment. Hoheisel was awarded physical custody of the child, and Frueh was awarded visitation. An amended judgment was entered in July 2004, setting Frueh's child support obligation at $168 per month under the child support guidelines. After the divorce, Hoheisel moved with the child from the parties' home in Goodrich to Bismarck. Hoheisel remarried in March 2006.

[¶ 3] In July 2007, Frueh moved for a change of custody, arguing there was a material change in circumstances because the child wanted to live with him, Hoheisel had remarried, and Hoheisel's husband physically assaulted the child. An affidavit and a handwritten letter from the child explaining why the child wanted to live with Frueh and alleging Hoheisel's husband grabbed him by the throat in 2006 were filed in support of Frueh's motion. The district court concluded Frueh did not establish a prima facie case under

N.D.C.C. § 14–09–06.6(4) warranting an evidentiary hearing. Frueh appealed, and in *Frueh v. Frueh*, 2008 ND 26, 745 N.W.2d 362, we held Frueh had presented sufficient evidence to establish a prima facie case for modification of custody. We reversed the district court's decision and remanded for an evidentiary hearing on Frueh's motion.

[¶ 4] During an August 12, 2008, evidentiary hearing, Frueh, Hoheisel, and several other witnesses testified, and the court interviewed the child in chambers. Both parties' attorneys were present during the child's interview but were not allowed to question the child. After the hearing, the court denied Frueh's motion to modify custody, finding Hoheisel's remarriage and the child's preference to live with Frueh were material changes in circumstances, but a change in custody would not be in the child's best interests.

[¶ 5] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. Frueh's appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.

## II

[¶ 6] Frueh argues the district court erred in denying his motion for a change of custody. He contends the court's finding that the child is not a mature child for purposes of expressing a preference is clearly erroneous, and the court improperly based its decision on its opinion that Frueh is not paying enough child support.

[¶ 7] A district court's decision whether to modify custody is a finding of fact, which will not be reversed on appeal unless it is clearly erroneous. *Siewert v. Siewert*, 2008 ND 221, ¶ 16, 758 N.W.2d 691. "A finding of fact is clearly erroneous if 'there is no evidence to support it, if

the finding is induced by an erroneous view of the law, or if the reviewing court is left with a definite and firm conviction a mistake has been made.'" *Id.* (quoting *Stanhope v. Phillips–Stanhope*, 2008 ND 61, ¶ 7, 747 N.W.2d 79). The district court is in a better position to weigh the evidence because it has the opportunity to observe the witnesses' demeanor and assess their credibility, and we do not retry custody issues or reassess the witnesses' credibility if the court's decision is supported by evidence in the record. *Id.* at ¶ 24. A district court's choice between two permissible views of the evidence is not clearly erroneous. *Id.*

### A

[¶ 8] If more than two years have elapsed since an order establishing custody was entered, a court may modify the prior custody order if the court finds:

a. On the basis of facts that have arisen since the prior order or which were unknown to the court at the time of the prior order, a material change has occurred in the circumstances of the child or the parties; and

b. The modification is necessary to serve the best interest of the child.

N.D.C.C. § 14–09–06.6(6). The party seeking to change custody has the burden of proving there has been a material change in circumstances and a change in custody is necessary to serve the child's best interests. *Siewert*, 2008 ND 221, ¶ 16, 758 N.W.2d 691.

[¶ 9] "A material change in circumstances is an important new fact that was not known at the time of the prior custody decree; however, not every change will be sufficient to warrant a change of custody." *Siewert*, 2008 ND 221, ¶ 17, 758 N.W.2d 691. A parent's

remarriage and a mature child's preference both may be changes in circumstances sufficient to warrant a change of custody. *Mosbrucker v. Mosbrucker,* 1997 ND 72, ¶ 10, 562 N.W.2d 390. Here, the district court found the child's preference and Hoheisel's remarriage constituted a material change in circumstances, and the parties do not argue those circumstances do not constitute a material change in circumstances.

## B

[¶ 10] If a district court finds there has been a material change in circumstances, it must then consider whether a change in custody is necessary to serve the child's best interests. *Siewert,* 2008 ND 221, ¶ 19, 758 N.W.2d 691. The court must apply the factors set out in N.D.C.C. § 14–09–06.2(1) to decide whether a change in custody is in the child's best interests. *Id.* The child's best interests must be considered against the backdrop of the stability of the child's relationship with the custodial parent. *Id.* The best interest factors include:

a.  The love, affection, and other emotional ties existing between the parents and child.

b.  The capacity and disposition of the parents to give the child love, affection, and guidance and to continue the education of the child.

c.  The disposition of the parents to provide the child with food, clothing, medical care, or other remedial care recognized and permitted under the laws of this state in lieu of medical care, and other material needs.

d.  The length of time the child has lived in a stable satisfactory environment and the desirability of maintaining continuity.

e.  The permanence, as a family unit, of the existing or proposed custodial home.

f.  The moral fitness of the parents.

g.  The mental and physical health of the parents.

h.  The home, school, and community record of the child.

i.  The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.

j.  Evidence of domestic violence. . . .

k.  The interaction and interrelationship, or the potential for interaction and interrelationship, of the child with any person who resides in, is present, or frequents the household of a parent and who may significantly affect the child's best interests. The court shall consider that person's history of inflicting, or tendency to inflict, physical harm, bodily injury, assault, or the fear of physical harm, bodily injury, or assault, on other persons.

l.  The making of false allegations not made in good faith, by one parent against the other, of harm to a child as defined in section 50–25.1–02.

m.  Any other factors considered by the court to be relevant to a particular child custody dispute.

N.D.C.C. § 14–09–06.2(1).

[¶ 11] Here, the district court applied the best interest factors and found none of the factors favored either Frueh or Hoheisel, except factors b and m, which favored Hoheisel. Frueh argues the district court improperly based its decision on the amount of child support he pays and erred in failing to consider the child's preference.

## 1

[¶ 12] The district court's decision referred to the amount of Frueh's child support obligation, and the court said the level of support was a relevant factor in deciding whether it was in the child's best interests to modify custody:

> Clearly with the financial resources [Frueh] has available for [the child] he has been able to provide more fun experiences for [the child]. In 2007 [Frueh] paid [the child] $4,500 for helping him on the farm. [The child] stated he would help [Frueh] and his uncle after he got up around 11:00 a.m. most days. Remarkably enough [Frueh] has only been able to afford to pay minimum wage based child support of $168 per month ($2,016 per year) to assist in the support of [the child], which is less then half of the money he pays [the child]. As he testified at the hearing when asked about his large farm operation, substantial acreage and his minimum wage income, "I've got expenses." Clearly [Frueh] has deliberately created an environment on his "minimum wage income" that allows him to provide far more for [the child] than his "remedial care." It is no wonder [the child] wants to live with [Frueh].

In considering other factors relevant to the custody dispute under N.D.C.C. § 14–09–06.2(1)(m), the court found:

> The Court is troubled by the fact [Frueh], with his large farming operation and his substantial acreage, and his "minimum wage" income, is so very able and willing to provide [the child] with a four wheeler and a snowmobile, more cash than he pays in child support, a checking account, a cell phone and lots of freedom. [Frueh] has clearly been engaged in a long term effort to "buy" [the child's] affection, and his plan has worked. [The child] clearly wants to be with [Frueh], but this treatment will not stop whether [the child] is in [Frueh's] custody or [Hoheisel's] custody. [Hoheisel] does not have the financial resources to compete. This is simply unfair. This factor favors [Hoheisel].

[¶ 13] We conclude the district court misapplied the law and impermissibly considered the amount of Frueh's child support obligation, which was set by a court order under the child support guidelines. When Frueh's support obligation was initially calculated in 2004, Frueh was a self-employed farmer farming 3,300 acres. His child support obligation was calculated using the child support guidelines and was based on a minimum wage income because the minimum wage exceeded his five-year average annual income, which is generally used to calculate a self-employed individual's child support obligation. Hoheisel requested the court impute Frueh's income, arguing he was underemployed, but the court found Hoheisel did not provide sufficient evidence Frueh was underemployed and ordered Frueh to pay $168 per month in child support. Frueh's child support obligation has not been reviewed since the 2004 amended judgment was entered. Frueh testified that he recently expanded his farming operation to farm 7,500 acres, and a review of his support obligation was held pending the outcome of his motion to change custody. The amount of a child support obligation calculated using the child support guidelines is presumed to be the correct amount of support. N.D. Admin. Code § 75–02–04.1–09. There was no evidence that Frueh ever refused to pay the ordered child support or that he was late with his support payments. Because Frueh's support obligation was calculated using the child support guidelines and is presumed to be the correct amount of support, we conclude the district court

misapplied the law and improperly considered the amount of Frueh's child support obligation in deciding whether to modify custody. *Cf. McDowell v. McDowell*, 2003 ND 174, ¶¶ 12–13, 670 N.W.2d 876 (parent's failure to support child was properly considered in deciding custody).

### 2

[¶ 14] Although there was evidence the child wants to live with Frueh, the district court found the child was not a mature child and did not consider the child's preference when deciding whether it was in the child's best interests to modify custody. We have said more weight should be given to a child's preference as the child matures. *Dronen v. Dronen*, 2009 ND 70, ¶ 14, 764 N.W.2d 675. The legislature has decided fourteen-year-old children are capable of acting responsibly in various matters. *Reineke v. Reineke*, 2003 ND 167, ¶ 17, 670 N.W.2d 841. *See also* N.D.C.C. § 14-10-17 ("Any person of the age of fourteen years or older may contract for and receive examination, care, or treatment for sexually transmitted disease, alcoholism, or drug abuse without permission, authority, or consent of a parent or guardian."); N.D.C.C. § 30.1–27–03 ("A minor of fourteen or more years may prevent an appointment of the minor's testamentary guardian from becoming effective, or may cause a previously accepted appointment to terminate."); N.D.C.C. § 47–24.1–14 (on petition of a minor who is at least fourteen years old, a court may order a custodian of the minor's property to deliver or pay to the minor so much of the property as the court considers advisable). This Court has recognized there is a legislative policy that children of a sufficient age and maturity "can and do make significant decisions in their lives, which courts must consider in determining children's custody preferences, and in making custody decisions." *Reineke*, at ¶ 17. A

mature child's preference may be particularly significant in deciding what is in the child's best interests, but it is not necessarily determinative. *Myers v. Myers*, 1999 ND 194, ¶ 7, 601 N.W.2d 264.

[¶ 15] Here, the district court found the child is not a mature child. In considering the child's home, school, and community records, the court said:

> [The child] is said to be an average student, and there is nothing negative in his school record. The Court is troubled, however, that [the child] stated he reads very little, although he does like four wheeling magazines. He doesn't read a newspaper or any books, nor does he watch any news or consider any news other than what he hears from his friends. His lack of interest in his own education and his lack of interest in the wider world indicate his lack of maturity.

In applying N.D.C.C. § 14-09-06.2(1)(i), the court found the child was not a mature child and his preference was not a factor in deciding custody:

> The Court finds [the child] understands exactly what he is doing and where he wants to live. He clearly loves four wheeling on the farm which he cannot do in Bismarck. He enjoys the freedom he has on the farm. He likes the checking account [Frueh] set up for him and the money he has access to through what [Frueh] pays him or gives him, along with the cell phone [Frueh] provides for him and which he uses to keep in touch with friends having his 180 plus contacts saved on his cell phone. He has enjoyed this experience so far. Our Supreme Court in *Freuh* [sic] at ¶ 12 mentioned "a mature child's preference to live with one parent." The Court agrees this factor really looks to the preference of a mature child. The

Court finds that [the child's] preference to live with [Frueh] is not "a mature child's preference." As previously noted, [the child] lacks maturity in his own education and in his lack of interest in the wider world. As to whether he has sufficient intelligence to express a preference, the Court questions whether [the child] has the maturity to clearly appreciate what is being done to him by [Frueh] essentially giving him anything he wants. In terms of what [the child] wants, this factor clearly favors [Frueh]. But since [the child's] preference is not that of "a mature child," this factor favors neither party.

[¶ 16] The maturity of the child is a factually driven issue and will depend on the facts and circumstances of the case. Under the clearly erroneous standard of review, we do not reassess evidence or the witnesses' credibility or retry a custody case, and we do not substitute our judgment for a district court's decision merely because we might have reached a different result. *Niemann v. Niemann*, 2008 ND 54, ¶ 11, 746 N.W.2d 3. "A choice between two permissible views of the weight of the evidence is not clearly erroneous and our deferential review is especially applicable for a difficult child custody decision involving two fit parents." *Id.* On appeal, the complaining party bears the burden of proving a finding of fact is clearly erroneous. *Koble v. Koble*, 2008 ND 11, ¶ 6, 743 N.W.2d 797. We conclude Frueh failed to meet his burden of proving the court's findings about the child's maturity are clearly erroneous, and we are not left with a definite and firm conviction a mistake has been made.

3

[¶ 17] The district court's findings that the child is not a mature child are not clearly erroneous, but we conclude the court impermissibly considered Frueh's child support obligation. We reverse the district court's decision denying Frueh's motion for change of custody, and remand for further proceedings to properly apply the best interest factors.

III

[¶ 18] Frueh argues the court abused its discretion by failing to allow the attorneys to present testimony from the child. He contends the court erred in failing to question the child about certain issues raised in the motion to change custody. The district court has discretion regarding the examination of witnesses, including child witnesses in custody proceedings. *Reineke*, 2003 ND 167, ¶ 16, 670 N.W.2d 841.

[¶ 19] During the August 12, 2008, evidentiary hearing, the court informed the parties it would interview the child in chambers and the parties' attorneys would be allowed to be present during the interview but would not be allowed to question the child. Frueh's attorney did not object and said, "That's fine, Your Honor." The child was questioned, and Frueh's attorney did not request the opportunity to ask the child any questions or request the court ask the child any further questions. "A party must object when the alleged error occurs so the trial court may take appropriate action, if possible, to remedy any prejudice that may have resulted." *Khokha v. Shahin*, 2009 ND 110, ¶ 16, 767 N.W.2d 159. Frueh's failure to object when the court interviewed the child or to request the court ask the child certain questions waived his argument on this issue.

IV

[¶ 20] Frueh contends the district court judge was biased against all farmers and is incapable of conducting a fair hearing.

Frueh did not move for a change of judge or raise the issue of judicial bias before the district court. " 'We have repeatedly held that issues not raised in the [district] court cannot be raised for the first time on appeal. The failure to raise the issue of judicial bias in the [district] court precludes our review on appeal.' " *Molitor v. Molitor*, 2006 ND 163, ¶ 12, 718 N.W.2d 13 (quoting *Wenzel v. Wenzel*, 469 N.W.2d 156, 158 (N.D.1991)).

V

[¶ 21] We conclude the district court's decision is clearly erroneous because the court considered impermissible factors in deciding whether it was in the child's best interests to modify custody. We reverse the order denying Frueh's motion for a change of custody and remand for the district court to properly consider the best interest factors.

[¶ 22] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, and CAROL RONNING KAPSNER, JJ., concur.

MARING, Justice, concurring and dissenting.

[¶ 23] I respectfully concur in parts II B.2, III, and IV, and dissent from the remainder of the majority opinion. The majority concludes that the district court erred in denying Frueh's motion for a change of custody. The majority concludes that the court improperly based its decision on its opinion that Frueh is not paying enough child support. I am of the opinion that there is evidence in the record to support the trial court's finding, and I disagree that the trial court misapplied the law or impermissibly considered the amount of Frueh's child support obligation or income in its decision that it would not be in the child's best interest to modify custody.

[¶ 24] The majority opinion concludes that the trial court relied on an impermissible factor in deciding custody because the court referred to the fact that Frueh was paying only $168 per month in child support based on his claim of "minimum wage" income. In the trial court's analysis of the best interest factors, it does mention these facts in its analysis of factor (c) and factor (m).

[¶ 25] In ¶ 12 of its opinion, the majority quotes at length from the trial court's analysis of factor (c), but fails to recognize that the trial court found factor (c) "favors neither party." Therefore, factor (c) did not weigh in favor of Hoheisel. The majority states that only factors (b) and (m) favored Hoheisel, but in fact the trial court also found factor (e), "[t]he permanence as a family unit, of the existing or proposed home," favored Hoheisel. *See* N.D.C.C. § 14–09–06.2(1)(e). Frueh does not raise an issue with regard to the trial court's finding on factor (e). Frueh also does not raise an issue with regard to the trial court's finding on factor (b), "[t]he capacity and disposition of the parents to give the child love, affection, and guidance and to continue the education of the child." *See* N.D.C.C. § 14–09–06.2(1)(b).

[¶ 26] Frueh does raise an objection to the trial court's finding on factor (m), because of the court's reference to his "minimum wage" income and his child support payment. The majority opinion, at ¶ 12, quotes this finding:

The Court is troubled by the fact [Frueh], with his large farming operation and his substantial acreage, and his "minimum wage" income, is so very able and willing to provide [the child] with a four wheeler and a snowmobile, more cash than he pays in child support, a checking account, a cell phone and lots of freedom. [Frueh] has clearly been

engaged in a long term effort to "buy" [the child's] affection, and his plan has worked. [The child] clearly wants to be with [Frueh], but this treatment will not stop whether [the child] is in [Frueh's] custody or [Hoheisel's] custody. [Hoheisel] does not have the financial resources to compete. This is simply unfair. This factor favors [Hoheisel].

Factor (m), under N.D.C.C. § 14–09–06.2(1), is a consideration of "[a]ny other factors considered by the court to be relevant to a particular child custody dispute." During the hearing in this case, Hoheisel asked Frueh how many acres he was farming and Frueh answered that he is farming 7,500 acres and has two full-time employees and one part-time employee. The trial court expressed surprise that he was paying minimum wage child support and Frueh responded: "I have a lot of expense." Frueh's attorney then asked him on redirect: "For example, if the child support did a review of you now based on last year's income, your support would probably go up?" Frueh answered: "Yes." Frueh's attorney then asked Hoheisel on recross-examination if there was a child support review pending the outcome of the modification case and Hoheisel answered "[y]es."

[¶ 27] I am of the opinion that the trial court did not base its decision to deny the motion to modify on its opinion that Frueh was not paying enough child support and, therefore, disagree with the majority's position. I believe the trial court drew an inference from the evidence that the father inappropriately attempted to recruit his child by giving his child expensive gifts and money, while at the same time claiming his expenses were high so he could not provide more than $168 per month in child support. The trial court found it inconsistent for Frueh to have minimal net income, but yet be able to provide the child a snowmobile, a four wheeler, $4,500 in pay for a summer's work, and a cell phone contract. The trial court consequently questioned the credibility of Frueh's motives. The trial court drew the inference from the evidence that the child's reasons for wanting to live with his dad were influenced by the expensive gifts, money, and freedom he received from his dad and that his dad had created a "fun" environment in order to gain the child's preference.

[¶ 28] The essence of the trial court's finding is not that Frueh is paying too little child support and, therefore, his motion to modify custody is denied, but rather that the conduct of Frueh in giving his twelve to thirteen-year-old son significant gifts and money when he has "minimum wage" income calls into question Frueh's credibility and improper influence on the child's preference.

[¶ 29] The majority summarily declares that it was impermissible for the trial court to consider his minimum wage income and the amount of child support paid by Frueh without citing one case to support it.

[¶ 30] Our Court has affirmed trial court decisions, in which the trial court considered the economics of the parents in custody determinations. In *Woods v. Ryan*, the father moved for a modification of custody of the parties' child who was in the custody of the mother. 2005 ND 92, 696 N.W.2d 508. The trial court granted the father's motion finding that "[f]actor 'c' favors [the father] by his earnings from his employment." *Id.* at ¶ 12. The trial court further found that the mother had been chronically unemployed. *Id.* Our Court concluded that the trial court's findings on factor (c) among others, which favored the father, supported the court's finding that a change in custody was necessary for the best interests of the child. *Id.* at ¶ 16.

[¶ 31] In *P.A. v. A.H.O.*, an original custody dispute, the trial court found, under factor (c), "that while both parties were equally willing and disposed to provide for J.O.'s needs, P.A. was in a better position to do so because his $28,000 per year salary was greater than A.H.O.'s $17,000 per year income." 2008 ND 194, ¶ 13, 757 N.W.2d 58. The mother, A.H.O., appealed arguing it was inappropriate to consider a party's income level in the best interests analysis. *Id.* Our Court held: "Money alone is not the totality of factor (c), but it has some relevance the district court can consider in its best interests analysis." *Id.* We held: "The trial court's finding on this factor was not clearly erroneous." *Id.*

[¶ 32] In *McDowell v. McDowell*, 2003 ND 174, 670 N.W.2d 876, the father appealed the award of custody of the parties' son to the mother. The father argued the court improperly found he was not supporting his son, because he was not aware of his obligation. *Id.* at ¶ 12. The trial court found:

> C. *Disposition of parents to provide child with food, clothing, and the like. This fact favors [the mother].* When [the father] returned from California to North Dakota, [the father] withdrew over $21,000 from marital assets to support himself. During the interim, [the father] did not provide financial support for [his son], with the exception of purchasing a few items of personal property for [him], and a limited amount of medical expenses. [The father's] failure to provide support is certainly noted.

*Id.* Our Court held that "[p]arents should not need a court order to know they are obligated to support their children." *Id.* at ¶ 13. We concluded the party's objection was without merit. *Id.* In the present case, Frueh admitted that he is underpaying child support for his son.

[¶ 33] In *Hogue v. Hogue*, 1998 ND 26, 574 N.W.2d 579, the father appealed the trial court's judgment awarding custody of the parties' child to the mother. The father argued the trial court erred in its analysis of factor (c). *Id.* at ¶ 10. The trial court found factor (c) in favor of the mother. *Id.* at ¶ 7. "Section 14–09–06.2(1)(c), N.D.C.C., states: 'The disposition of the parents to provide the child with food, clothing, medical care, or other remedial care. . . .' In its findings, the trial court considered [the father's] failure to have contact with and pay support for his son by a previous marriage as a negative factor against him." *Id.* The father argued the trial court erred in considering his failure to make child support payments and that it had no relevancy and was not applicable under N.D.C.C. § 14–09–06.2. *Id.* at ¶ 10. Our Court disagreed stating: "[The father's] relationship and child support obligation to [his son from a previous marriage] is relevant to his disposition to provide for [his son]. Even if it does not fit squarely within subsection c, it certainly is a factor which may be considered by the trial court under subdivision m." *Id.* at ¶ 12. Our Court held the trial court's findings were not clearly erroneous. *Id.*

[¶ 34] Based on our case law, both the fact of Frueh's increase in income and his admission that he is probably paying less child support than he should are relevant to his motion to modify the custody of his son. They are relevant to Frueh's disposition and willingness to provide food, shelter, clothing, and other basic needs for his son. The $168 per month in child support probably does not even cover the food the teenage child needs per month. The evidence in the record indicates that it is because of Frueh's motion to modify custody that a child support review has not taken place. Therefore, even if the majority's interpretation of the trial court's find-

ing is accepted, I am of the opinion it was not impermissible for the trial court to consider economic evidence in its determination of whether to modify custody.

[¶ 35] Frueh claimed that there were material changes in circumstances, namely the preference of the child and the mother's remarriage, which necessitated a change in the physical custody of the child to him. The trial court found neither of these changes necessitated a change in the custody of the child in the best interests of the child. After a review of the 197 pages of transcript, I conclude the findings of the trial court are supported by the evidence in the record and the trial court did not misapply the law or impermissibly consider evidence. I would affirm the order of the trial court denying the motion to modify custody because it is not clearly erroneous.

[¶ 36] Mary Muehlen Maring