2011 ND 145

**Julie E. GLASS, Plaintiff
and Appellant**

v.

**Darin M. GLASS, Defendant
and Appellee.**

**No. 20100260.**

Supreme Court of North Dakota.

July 15, 2011.

Brenda A. Neubauer, Bismarck, N.D., for plaintiff and appellant.

Suzanne Marie Schweigert (argued) and Stacy Mae Moldenhauer (on brief), Bismarck, N.D., for defendant and appellee.

SANDSTROM, Justice.

[¶ 1] Julie E. Glass appeals from a judgment changing primary residential responsibility of her three children from her to their father, Darin M. Glass. We affirm, concluding the district court's decision to change primary residential responsibility is not clearly erroneous and the court did not abuse its discretion in denying Julie Glass's request for a continuance.

I

[¶ 2] The parties lived together in Bismarck at the time of their divorce in 2005. The divorce judgment incorporated the parties' "Property Settlement and Custody Agreement," which awarded Julie Glass primary residential responsibility of the couple's three sons, who were 16, 13, and 8 years old during the post-divorce proceedings in this case. The oldest child has attention deficit hyperactivity disorder and a form of Asperger's syndrome. The youngest child also has Asperger's syndrome. Darin Glass was ordered to pay child support and was awarded reasonable parenting time.

[¶ 3] Julie Glass moved with the children to Casselton in June 2006 and married Mark Hopewell in July 2007, but the

couple divorced in February 2009 after Hopewell lost his job in Fargo and moved to Colorado to seek employment. Julie Glass began dating Steve McNab in March 2009, and he moved into Julie Glass's home two months later. McNab is divorced and has three children through his prior marriage, and during his parenting weekends, McNab's children resided with Julie Glass and her children. Darin Glass remarried in February 2009 and lives with his wife, Debbie Glass, in Mandan. After his divorce, Darin Glass exercised sporadic parenting time with his children until his remarriage, when he began exercising parenting time about one weekend per month.

[¶ 4] On December 31, 2009, Darin Glass moved for an ex parte interim order to immediately change the primary residential responsibility of his three children, which was followed by a motion to modify the parties' divorce judgment to grant him primary residential responsibility of the children. The motions were triggered by two incidents that occurred at Julie Glass's Casselton home in late 2009. The first incident occurred in late October 2009 when the oldest son, who has been described as "suffer[ing] from a lack of judgment and insight," took a gun from his bedroom and pointed it at McNab's children. Investigating law enforcement officers searched the son's bedroom and found more than ten firearms, ammunition, a used pipe containing an unidentified substance, two empty alcohol bottles, and prescription medications. As the result of this incident, McNab was restricted to supervised parenting time with his children. The second incident occurred in the middle of the night in late December 2009 after Julie Glass and McNab had been drinking alcohol. McNab got into a physical altercation with Julie Glass and a verbal altercation with the oldest son when Julie Glass tried to stop McNab from confronting the son about the gun incident. All of the children were present in the home, and the younger children were awakened by the disturbance. Julie Glass called 911 and informed the operator that McNab had punched or kicked her in the stomach and that McNab would kill her. Although charges were filed against McNab, those charges were ultimately dismissed.

[¶ 5] While staying with Darin Glass temporarily in January 2010, the oldest child called 911 and claimed Debbie Glass was threatening him. A law enforcement officer was dispatched to the residence but took no action. The oldest child was argumentative with and disrespectful to the officer and Debbie Glass at the time. Social Services investigated and determined no services were required.

[¶ 6] A parenting investigator's report was submitted on May 28, 2010, less than 30 days before the scheduled June 22 and 23, 2010, evidentiary hearing. The parenting investigator recommended:

> The children should remain in Julie's primary residential responsibility if and only if she terminates her involvement with Steven McNab immediately. She needs to make her children her priority, and dedicate herself to their welfare at this time in their young lives. If she is not willing to do that, then Darin shall have primary residential responsibility.

[¶ 7] The district court denied Julie Glass's request for a continuance of the scheduled hearing, and Julie Glass declined the court's offer to delay the parenting investigator's testimony until July 1, 2010, after the 30-day time period in N.D.C.C. § 14–09–06.3(3) and N.D.R.Ct. 8.6(c)(9) had passed. Numerous witnesses testified at the evidentiary hearing, including the two oldest children. The children testified that they wanted to live with Julie Glass. Julie Glass testified that she "hope[d]" to continue her relationship with

McNab. Following the hearing, the court granted Darin Glass's motion and awarded him primary residential responsibility of the children.

[¶ 8]   The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. Julie Glass's appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.

## II

[¶ 9]   Julie Glass argues the district court erred in changing primary residential responsibility of the children to Darin Glass.

[¶ 10]   Section 14–09–06.6(6), N.D.C.C., governs motions to modify primary residential responsibility after two years from the entry of a previous order:

> The court may modify the primary residential responsibility after the two-year period following the date of entry of an order establishing primary residential responsibility if the court finds:
>
> a.   On the basis of facts that have arisen since the prior order or which were unknown to the court at the time of the prior order, a material change has occurred in the circumstances of the child or the parties; and
>
> b.   The modification is necessary to serve the best interest of the child.

■■■■   [¶ 11]   In *Lechler v. Lechler*, 2010 ND 158, ¶ 9, 786 N.W.2d 733, we explained the two-step analysis for a motion to modify primary residential responsibility:

> The party seeking to change primary residential responsibility has the burden of proving there has been a material change in circumstances and a change in primary residential responsibility is nec-

essary to serve the child's best interests. *Frueh v. Frueh*, 2009 ND 155, ¶ 8, 771 N.W.2d 593. We have defined a "material change in circumstances" as "an important new fact that was not known at the time of the prior custody decree." *Siewert v. Siewert*, 2008 ND 221, ¶ 17, 758 N.W.2d 691. If a district court determines no material change in circumstances has occurred, it is unnecessary for the court to consider whether a change in primary residential responsibility is necessary to serve the children's best interests. *See Machart v. Machart*, 2009 ND 208, ¶ 11, 776 N.W.2d 795. A district court's decision whether to modify primary residential responsibility is a finding of fact which will not be reversed on appeal unless clearly erroneous. *Dunn v. Dunn*, 2009 ND 193, ¶ 6, 775 N.W.2d 486. A finding of fact is clearly erroneous if there is no evidence to support it, if the finding is induced by an erroneous view of the law, or if the reviewing court is left with a definite and firm conviction a mistake has been made. *Id.*

*See also Gussiaas v. Neustel*, 2010 ND 216, ¶ 5, 790 N.W.2d 476.

### A

■■   [¶ 12]   Julie Glass argues the district court failed to conduct the appropriate two-step analysis, because it did not make findings that any of the facts presented constituted a material change in circumstances.

■■   [¶ 13]   "'A material change of circumstances can occur if a child's present environment may endanger the child's physical or emotional health or impair the child's emotional development.'" *Siewert v. Siewert*, 2008 ND 221, ¶ 17, 758 N.W.2d 691 (quoting *Stanhope v. Phillips–Stanhope*, 2008 ND 61, ¶ 6, 747 N.W.2d 79). If domestic violence does not rise to the level

necessary to invoke the presumption against primary residential responsibility contained in N.D.C.C. § 14–09–06.2(j), there may nevertheless be a material change of circumstances to justify a change in primary residential responsibility under N.D.C.C. § 14–09–06.6. *See Lechler,* 2010 ND 158, ¶ 17, 786 N.W.2d 733; *Niemann v. Niemann,* 2008 ND 54, ¶ 14, 746 N.W.2d 3. The relocation of a parent with primary residential responsibility, *see Neustel,* 2010 ND 216, ¶ 8, 790 N.W.2d 476, that parent's history of relationships with significant others, *see id.* at ¶ 9, and improvements in a noncustodial parent's situation, *see Ehli v. Joyce,* 2010 ND 199, ¶ 8, 789 N.W.2d 560, when accompanied by other relevant circumstances, may also constitute material changes in circumstances.

[¶ 14] Here, the district court focused on Julie Glass's move with the children from Bismarck to Casselton, an improvement in the stability of Darin Glass's life, Julie Glass's relationship with McNab shortly after her divorce from Hopewell, the gun incident with the oldest child, and McNab's "domestic assault" of Julie Glass. The court found that "sufficient facts as set out above have arisen since the prior order was issued that a modification is necessary to serve the best interests of the children." Although the court did not use the terms "material change in circumstances," it is obvious from the court's analysis that it found a material change of circumstances had occurred. We are satisfied the court was not laboring under a misapprehension of the law and conclude its finding that a material change in circumstances had occurred is not clearly erroneous.

B

[¶ 15] Julie Glass argues the district court erred in finding any changed circumstances required a modification of primary residential responsibility, because the children had been living with her for the past five and one-half years.

[¶ 16] If a district court finds a material change of circumstances has occurred, the court cannot change primary residential responsibility of the children unless the court further finds that the modification is necessary to serve the best interests of the children. *See Neustel,* 2010 ND 216, ¶ 12, 790 N.W.2d 476; *Dufner v. Trottier,* 2010 ND 31, ¶ 12, 778 N.W.2d 586. "[T]he added requirement of showing a change of [primary residential responsibility] is compelled or required gives some finality to a trial court's original custody decision and helps ensure that a child is not bounced back and forth between parents as the scales settle slightly toward first one parent and then the other." *Neustel,* at ¶ 12 (internal quotations omitted). Consequently, "[b]ecause of the importance accorded custodial stability and continuity, courts in a modification proceeding must weigh the statutory best-interest factors against the backdrop of the stability of the child's relationship with the custodial parent." *Lovin v. Lovin,* 1997 ND 55, ¶ 17, 561 N.W.2d 612.

[¶ 17] In this case, the district court analyzed the statutory best interest factors under N.D.C.C. § 14–09–06.2(1) and found factors (b) (ability of each parent to assure child receives adequate shelter and safe environment), (d) (sufficiency and stability of each parent's home environment and desirability of maintaining continuity), and (k) (interaction and interrelationship of the child with people who are present in the household of a parent's home who may significantly affect the child's best interests) favored Darin Glass. The court found factors (c) (child's developmental needs and ability of each parent to meet those needs) and (h) (home, school and

community records of the child and potential effect of any change) favored Julie Glass. The court found the remaining factors favored neither party.

[¶ 18] Julie Glass argues the district court erred in finding neither party was favored under N.D.C.C. § 14–09–06.2(1)(i) (preference of a mature child), because the oldest children expressed their preferences to live with Julie Glass. A mature child's preference should be considered by a court, but only if there are persuasive reasons for that preference. *See Machart*, 2009 ND 208, ¶ 12, 776 N.W.2d 795; *Haugrose v. Anderson*, 2009 ND 81, ¶ 15, 765 N.W.2d 677. Here the court noted the "children have flip flopped with their desires at different times" and chose to discount their stated preferences because "they appear to have actually misrepresented to this Court or other agencies what actually has occurred in their home in the past." The court's finding that there were not persuasive reasons for the preferences is supported by the record.

[¶ 19] Julie Glass argues the district court recognized that this case was a "close call" and, therefore, primary residential responsibility of the children should have remained with her. We have often stated that "close calls" in disputes over changing primary residential responsibility should be resolved in favor of continuing primary residential responsibility. *See, e.g., Mayo v. Mayo*, 2000 ND 204, ¶ 26, 619 N.W.2d 631; *Myers v. Myers*, 1999 ND 194, ¶ 10, 601 N.W.2d 264. Nevertheless, cases that are "close calls" may result in a change of primary residential responsibility when other considerations are weightier than the custodial stability factor. *See Mayo*, at ¶¶ 27–30.

[¶ 20] It is clear from the district court's decision, the primary considerations that outweighed custodial stability

and continuity were the presence of McNab in Julie Glass's life, her refusal to terminate the relationship unless ordered by the court, and her failure to realize how her relationships impact the children. Even under the factors the court found favored Julie Glass, the court continued to note her "inability to see how her relationships affect the children."

[¶ 21] In finding Darin Glass was favored under N.D.C.C. § 14–09–06.2(1)(b), the district court stated:

The parties are equal in this factor except for the ability to provide a safe environment. Julie has provided the food, clothing, shelter, medical care to the children, yet there is no indication Darin will not be able to assure the children receive these necessities. Darin is favored in the ability to provide a safe environment given the domestic incidents, which have occurred while the children have been in Julie's custody.

[¶ 22] In finding Darin Glass was favored under N.D.C.C. § 14–09–06.2(1)(d), the district court stated:

Again this factor is a close call. The children have lived with Julie for the past five years. Now those years have had instability as different men enter the home through Julie's relationships and the children were moved to Casselton to further Julie's relationship with Hopewell. They have lived in the same area and gone to the same school for the last four years. Darin has the benefit of extended family in or near his home. Julie might be slightly favored in this factor as changing the children's home environment would impact their academic and social environment yet this is outweighed in the Court's opinion by Julie's actions in changing the children's environment by moving and bringing in

different men into the children's lives and home.

[¶ 23] In finding Darin Glass was favored under N.D.C.C. § 14–09–06.2(1)(k), the district court stated:

The Court finds McNab is a negative impact on the children given the domestic violence situation. This incident may be minimized by all involved, but the fact it occurred at all is significant to this Court. The Court also sees the use of alcohol and the possible slap incident in front of [the middle child] as extremely concerning as he makes the statement to social services and now recants the statement. Although[ ] there is evidence of positive effects with Julie and the children it is obvious to this Court Julie[']s choice is for Julie and not for the best interests of the children. The Court has attempted to resolve[ ] this by requiring McNab to not be near the home or the children. This has been complied with. Julie has not ended her relationship with McNab, though she states she will if the Court so requires. Julie needs to make her own positive choices without the Court controlling those choices. Again, in the Court's opinion Julie chooses her relationship over the children's best interests. Debbie appears to have had a positive impact on the children as a step mother until this action was started. The one incident of [the oldest child] calling 911 due to Debbie's actions appear to this Court to be [the oldest child's] manipulating the situation to his advantage. Darin's family is in the Mandan area and will have a positive influence on the children.

[¶ 24] We do not reweigh evidence or reassess witness credibility when the evidence supports the district court's findings. *See Dufner*, 2010 ND 31, ¶ 6, 778 N.W.2d 586. The court's findings are supported by the evidence in the record. We conclude the court's decision to change primary residential responsibility of the children to Darin Glass is not clearly erroneous.

### III

[¶ 25] Julie Glass argues the district court erred in denying her request for a continuance, because the parenting investigator's report was received less than 30 days before the evidentiary hearing.

[¶ 26] Section 14–09–06.3(3), N.D.C.C., provides in relevant part that the "court shall mail the investigator's report to counsel and to any party not represented by counsel at least thirty days before the hearing." *See also* N.D.R.Ct. 8.6(c)(9) ("parenting investigator shall ... file the written report with the court and serve it on the parties at least 30 days prior to the hearing"). At a pretrial conference on June 3, 2010, Julie Glass moved for a continuance of the hearing, which had been scheduled for June 22 and 23, 2010, because these dates were less than 30 days from her receipt of the parenting investigator's report. The district court denied the continuance but scheduled a third hearing date for July 1, 2010, more than 30 days after receipt of the report, to allow the parenting investigator to testify. Julie Glass's attorney requested that the July 1, 2010, hearing date be cancelled because she had a conflict. The parenting investigator testified on June 23, 2010, and a third hearing date was added on June 24, 2010.

[¶ 27] A district court's decision to grant or deny a motion for continuance will not be reversed on appeal absent an abuse of discretion. *Clark v. Clark*, 2006 ND 182, ¶ 7, 721 N.W.2d 6. A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or when its decision is not the product of a

rational mental process. *Id.* Julie Glass argues the court's proposed solution to the untimely report did not comply with the 30–day requirement, because the 30–day requirement applies to the "hearing," and the hearing commenced on June 22, 2010. The purpose of the 30–day requirement in N.D.C.C. § 14–09–06.3(3) is to give a party adequate opportunity to prepare to cross-examine the parenting investigator and any person the investigator has consulted for the report. *See Green v. Green,* 1999 ND 86, ¶ 9, 593 N.W.2d 398. The court's proposed solution complied with the purpose of the 30–day requirement. Moreover, Julie Glass must show prejudice resulted from the court's denial of the motion for continuance. *See Flattum–Riemers v. Peters–Riemers,* 2001 ND 121, ¶ 15, 630 N.W.2d 71. The parenting investigator recommended that Julie Glass retain, on condition, primary residential responsibility. Julie Glass has not shown she was unable to adequately review the report or shown she would have defended Darin Glass's motion any differently if the continuance had been granted.

[¶ 28] We conclude the district court did not abuse its discretion in denying Julie Glass's request for a continuance.

## IV

[¶ 29] It is unnecessary to address the other allegations made by Julie Glass because they either lack merit or are unnecessary to the decision. We deny Darin Glass's request for attorney fees on appeal. We affirm the judgment.

[¶ 30] GERALD W. VANDE WALLE, C.J., RONALD E. GOODMAN, S.J., DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.

[¶ 31] The Honorable RONALD E. GOODMAN, S.J., sitting in place of CROTHERS, J., disqualified.

MARING, Justice, concurring in part and dissenting in part.

[¶ 32] I concur in Part III, but respectfully dissent from Part II.B. of the opinion, which affirms the trial court's decision to change primary residential responsibility of the three minor children to Darin Glass. Based on the entire record, I am left with a definite and firm conviction a mistake has been made and, therefore, I would reverse.

[¶ 33] The trial court found "Julie [Glass] [ ] provided the food, clothing, shelter, [and] medical care to the children" and served as the children's primary caretaker since the parties' divorce in 2005. The trial court explained Julie Glass "has shouldered the majority of the children's needs for medical appointments, schooling, special needs of the children, sports and activities" since the divorce and acknowledged Darin Glass "has not been greatly involved with the children's schooling, medical needs, activities and sporting events until the beginning of this year when this action started." The trial court further found Darin Glass "has not exercised the type of concern and/or parenting with his children as a parent should." Yet, relying almost exclusively on the domestic assault incident against Julie Glass, the trial court concluded a modification of primary residential responsibility is warranted. *See Majority,* at ¶ 20 (stating the trial court's primary reasons for modifying primary residential responsibility were "the presence of McNab in Julie Glass's life, her refusal to terminate the relationship unless ordered by the court, and her failure to realize how her relationships impact the children"). I cannot agree with the trial court's conclusion.

[¶ 34] A parent's ability to provide her children with an environment that is free of any physical or emotional harm is un-

doubtedly an important consideration in modification proceedings, but taking away Julie Glass's primary residential responsibility of her children on the ground she "*chooses* her [abusive] relationship over the children's best interest," shows little insight into the complexities of domestic violence and revictimizes an already victimized mother. (Emphasis added.) *See Nicholson v. Williams*, 203 F.Supp.2d 153, 200–05 (E.D.N.Y.2002) (recognizing abused mothers are often accused of "failure to protect" their children); *see also* Megan Shipley, *Reviled Mothers: Custody Modification Cases Involving Domestic Violence*, 86 Ind. L.J. 1587, 1589 (2011) (arguing that taking custody away from an abused mother seems to penalize her for being a victim of domestic violence). I am of the opinion the trial court's decision to take away Julie Glass's primary residential responsibility of her children penalizes Julie Glass for being the victim of domestic violence and ignores the steps she has taken to assure a safe environment for her children.

[¶ 35] The trial court found Steve McNab has not been near Julie Glass's home or near the children since the domestic violence incident. However, focusing on what it described as Julie Glass's refusal to end her relationship with Steve McNab, absent a court order, the trial court concluded: "Julie [Glass] needs to make her own positive choices without the [c]ourt controlling those choices." I disagree. The trial court's conclusion erroneously assumes Julie Glass actually has a choice of leaving her abuser and mischaracterizes her trial testimony to mean that she could leave, but would not leave, an abusive relationship for the sake of her children. Contrary to the trial court's conclusion, Julie Glass's trial testimony shows her children are her primary concern:

Q: What—now, again, what would you like to see as a possibility for you and Mr. McNab?

A: I would like for us to be able to continue counseling and see where that would lead.

Q: Do you have any intentions to allow him back in the house?

A: No.

Q: What if the Court conditions custody of the children on you letting— getting out of the romantic relationship and says this has to stop, do not see him anymore?

A: Then that's what I would do.

Q: What is the most important thing to you?

A: My children.

[¶ 36] Moreover, the record shows, and the trial court agrees, the children have done well academically and socially while in the care of Julie Glass. The trial court further found "Julie [Glass] has done a remarkable job with the children" and concluded she has had "positive effects" on their development. Based on the entire record, I am left with a definite and firm conviction the trial court made a mistake by changing the primary residential responsibility of the children to Darin Glass. By taking away Julie Glass's primary residential responsibility of her children, the trial court penalizes Julie Glass for being a victim of domestic violence and effectively revictimizes her. I cannot affirm a decision that not only revictimizes an abused mother, but is also likely to discourage other victims of domestic violence from coming forward with reports of abuse, in fear that they, too, might lose primary residential responsibility of their children.

[¶ 37] MARY MUEHLEN MARING