2014 ND 68

**Thomas Francis TOPOLSKI, Plaintiff and Appellee**

v.

**Jean Evonne TOPOLSKI, Defendant and Appellant.**

**No. 20130276.**

Supreme Court of North Dakota.

April 3, 2014.

Theresa L. Kellington, Bismarck, ND, for plaintiff and appellee.

Thomas M. Jackson, Bismarck, ND, for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Jean Evonne Topolski appeals from an amended judgment granting Thomas Francis Topolski primary residential responsibility over the couple's minor child. We affirm the district court judgment.

I

[¶ 2] Jean and Thomas Topolski entered into a stipulated divorce agreement. On March 18, 2010, judgment was entered based on their stipulation. The divorce judgment gave primary residential responsibility of the couple's minor child, K.T., born in 2008, to Jean Topolski and gave Thomas Topolski parenting time. On December 7, 2012, Thomas Topolski moved to amend the judgment requesting that primary residential responsibility for the child be changed from Jean Topolski to Thomas Topolski, that a parenting schedule be established for Jean Topolski, that a child support obligation be established for Jean Topolski, and that Thomas Topolski's child support obligation be terminated.

[¶ 3] The district court found that Thomas Topolski had established a prima facie case, and an evidentiary hearing was held. On July 8, 2013, the district court filed its findings of fact, conclusions of law, and order for amended judgment. On July 30, 2013, the district court filed an amended judgment transferring primary residential responsibility over the child to Thomas Topolski, setting a parenting time schedule for Jean Topolski, terminating Thomas Topolski's child support obligation, and ordering the parties to submit applicable child support calculations to determine Jean Topolski's child support obligation. Jean Topolski filed a request for reconsideration, which was denied by the district court.

[¶ 4] On August 23, 2013, a second amended judgment was filed, which adopted Thomas Topolski's proposed child support calculations and established the child support obligation for Jean Topolski. Jean Topolski appeals only the July 8, 2013 findings of fact, conclusions of law, and order for amended judgment and July 30, 2013 amended judgment modifying primary residential responsibility.

II

[¶ 5] Under N.D.C.C. § 14–09–06.6(6), when a party seeks modification of a primary residential responsibility order more than two years after the original order was entered, a district court may modify the primary residential responsibility if the court finds:

a. On the basis of facts that have arisen since the prior order or which were unknown to the court at the time of the

prior order, a material change has occurred in the circumstances of the child or the parties; and

b. The modification is necessary to serve the best interests of the child. When evaluating the best interests of the child, the court must consider, when applicable, the factors listed at N.D.C.C. § 14–09–06.2(1).

◼ [¶ 6] On appeal, Jean Topolski argues the district court erred in failing to articulate the best interest factors in its decision. "A district court's decision whether to modify primary residential responsibility is a finding of fact which will not be reversed on appeal unless clearly erroneous." *Glass v. Glass*, 2011 ND 145, ¶ 11, 800 N.W.2d 691 (citation omitted). However, Jean Topolski is not challenging the district court's findings; she is arguing that the district court failed to meet the standard, established by this Court in prior cases, for articulating those findings in its findings of fact, conclusions of law, and order for amended judgment. She also argues that the district court misapplied the law regarding consideration of the parties' pre-divorce conduct. Jean Topolski does not challenge the district court's finding that a material change in circumstances occurred.

### III

◼ [¶ 7] Jean Topolski argues the district court erred in failing to articulate the best interest factors in its decision. A district court has substantial discretion in making a determination concerning primary residential responsibility, but the court must consider all of the applicable best interest factors in reaching that determination. *Wolt v. Wolt*, 2010 ND 26, ¶ 9, 778 N.W.2d 786. This Court has previously concluded a district court need not make separate findings for each best interest factor or consider irrelevant factors,

and a court's findings regarding one best interest factor may be applicable to other factors. *See Interest of S.R.L.*, 2013 ND 32, ¶ 7, 827 N.W.2d 324. However, "the court's findings must contain sufficient specificity to show the factual basis for the [primary residential responsibility] decision." *Wolt*, 2010 ND 26, ¶ 9, 778 N.W.2d 786 (citation omitted). "A court's findings of fact are sufficient if they afford a clear understanding of the court's decision and assist the appellate court in conducting its review." *Dieterle v. Dieterle*, 2013 ND 71, ¶ 7, 830 N.W.2d 571 (citation omitted).

◼ [¶ 8] In this case, the district court's findings of fact, conclusions of law, and order for amended judgment included a five and a half page findings of fact section analyzing the testimony and exhibits offered at the evidentiary hearing. The district court concluded, "In reviewing all the factors set out in § 14–09–06.2 of the North Dakota Century Code, as those factors relate to the facts in this case, the best interest of [the child] mandates a change in residential responsibility from Defendant, Jean [Topolski], to Plaintiff, Thomas Topolski." While the district court did not specifically reference each of the best interest factors as they related to its factual findings, the findings were sufficiently detailed to allow this Court to understand the basis for the district court's primary residential responsibility decision:

[¶ 9] The district court found:

The minor child, K.T., fell sometime in the summer of 2010 resulting in a cracked tooth. One of K.T.'s teeth was turning black. K.T. was experiencing serious ear aches as a result of her deteriorating dental status. Pictures of the condition of K.T.'s teeth were admitted into evidence at time of trial as Plaintiff's Exhibit Number 1. As the pictures clearly depict, the child's teeth have been severely neglected. Jean has

not taken the child to see a dentist for annual checkups and/or preventative dental care.

At the time of the hearing on Thomas's Motion for Interim Order in January of 2013, Jean testified that she had taken K.T. to see a dentist. She testified at said hearing that she took K.T. to Garrison Dental. Plaintiff's Exhibit Number 3 proves directly to the contrary. Garrison Dental specifically indicated that K.T. had not been seen in their office for any dental reason.

Plaintiff's Exhibit Number 2 is a letter from Dakota Kids Dentistry which indicates that K.T. was scheduled to see someone at Dakota Kids Dentistry on April 12, 2011. Jean called and rescheduled it until August 2, 2011. Jean called again and rescheduled until August 17, 2011. Jean cancelled that appointment without notice and without rescheduling.

Plaintiff's Exhibit Number 6 is an Assessment from MCH/Health Tracks to Jean, where they specifically recommended "initiating annual dental exams." This assessment was dated February 2, 2011.

At the hearing, when Jean was cross examined about her previous testimony at the interim hearing, in January, Jean again indicated that she did, in fact, take K.T. to see a dentist, but clarified that it was during a scheduled dental appointment for Jean and not the child. While they were at Jean's dental appointment, she asked the dentist to look at K.T.'s teeth. No dental records were produced to support this.

Thomas took K.T. to a dental specialist to exam[ine] and treat K.T.'s teeth. K.T. had three cavities. The cavities were filled. Defendant's Exhibit Number B shows that Jean took K.T. to a dentist on February 20, 2013. Jean has not, however, taken measures to prevent any further dental problems, to address K.T.'s ongoing cleaning or other preventative measures. Additionally, it would not have cost Jean anything to take K.T. in for most dental work. Thomas has dental insurance that covers expenses such as cleaning, x-rays, and cavities. This is as set forth in Plaintiff's Exhibit Number 4.

K.T. experienced a rash commencing at approximately the beginning of the year 2012. Plaintiff's Exhibit Numbers 5 and 6, recent pictures of K.T., show the condition and severity of this rash. Jean took K.T. to the doctor on February 1, 2012, for the rash. The recommended plan was "dry skin care, avoidance of nonspecific irritants, 1% hydrocortisone. If that is ineffective, mom has prescription for 2.5% hydrocortisone and if that is ineffective, she is going to call and get a prescription for mometasone." The next doctor visit was June 4, 2012. The child was diagnosed with molluscum contagiosum. The doctor recommended a recheck in next 3 weeks if not better as well as close monitoring on an outpatient basis. The next visit to the doctor was not until November 29, 2012, five months later. There were lesions of molluscum contagiosum over the buttocks and upper thighs.

Andrea Topolski, wife of Thomas, then took K.T. to Dr. Peterson on January 4, 2013. K.T. had molluscum all over both buttocks, behind both knees, more behind the right thigh than the left and couple in her left inguinal area, one on her mons and one lesion on her left inner thigh and a couple on her feet. The doctor treated 12–15 of these lesions with cantharidin plus. The doctor reflected in his notes, Plaintiff's Exhibit Number 7, that "we see a lot of this in the winter because of dry skin, skin

being not intact so virus can set up shop. Recommended moisturizing and keeping skin as hydrated as possible to prevent this was reoccurring."

Dr. Peterson's treatment of chemically cauterizing 12–15 of the lesions using cantharidin was to force the child's immune system to recognize the bacteria and become capable of eliminating the fires that cause the molluscum contagiosum. Defendant's Exhibit Number D affirms this as it specifically states that "it appears that . . . immune system has recently become capable of eliminating fires that cause this molluscum contagiosum."

Jean smokes cigarettes in her vehicle when K.T. is present.

These findings speak to Jean Topolski's ability to assure that K.T. receives adequate medical care and a safe environment. *See* N.D.C.C. § 14–09–06.2(1)(b).

[¶ 10] The district court found, "Jean has allowed K.T.'s wants, likes, and dislikes to inappropriately influence Jean's decision making in regard to extended parenting time for Thomas with K.T." This finding speaks to Jean Topolski's willingness to facilitate and encourage a close and continuing relationship between Thomas Topolski and K.T. *See* N.D.C.C. § 14–09–06.2(1)(e).

[¶ 11] The district court found:

Jennifer Streich, an experienced kindergarten teacher who is qualified in administering tests for progression to kindergarten, gave testimony as to K.T.'s educational status. K.T. has no learning disabilities. K.T. is, however, deemed to be significantly behind other five-year olds. This testimony is supported by Plaintiff's Exhibit 31 showing that K.T. could not identify the first letter in her name, could identify only 3 out of 26 letters, was able to count but not consistently, and was unable to count 1–10. K.T. has not been introduced to material as she should have been. K.T. is significantly behind in her educational status.

K.T. is doing her preschool at Our Redeemer's Christian School in Minot. Our Redeemer's also conducted an assessment on K.T. in regard to her educational status for progression to kindergarten. Plaintiff's Exhibit 10 is a letter of recommendation advising that K.T. should attend another year of preschool. K.T. could identify 7 out of 26 letters of the alphabet, 5 out of 10 numbers, 3 out of 5 shapes and 4 days of the week.

Jean plans to advance K.T. to kindergarten in the fall of 2013.

These findings relate to K.T.'s developmental needs, Jean Topolski's inability to meet those needs, and K.T.'s school records. *See* N.D.C.C. § 14–09–06.2(1)(c) and (h).

[¶ 12] The district court found:

Thomas was granted 30 days of summer parenting time in the Judgment. Thomas has not received his 30 days of summer parenting time for the years 2010, 2011, and 2012. Other parenting times allowed for Thomas have been inconsistent and somewhat haphazard. Telephone contact allowed for Thomas has also been sporadic. There was a time when Thomas' phone number was blocked.

On two occasions, when K.T. was involved in life-threatening mishaps, Thomas was not informed. On one particular occasion, it seems apparent that Thomas was deliberately misinformed of the circumstances regarding the involvement of K.T. There was one traffic accident in which the vehicle was totaled, and K.T. was a passenger. K.T. was, fortunately, unhurt, but Thomas was not informed. The other incident was a fire

at the apartment complex where Jean and K.T. were living. Thomas found out about the fire event from a third person. In Thomas' attempt to assure knowledge of his daughter's safety and well-being, Jean appeared to initially refuse his calls, and then once contact was made, Jean refused to allow Thomas to visually see K.T.

These findings pertain to Jean Topolski's willingness to facilitate and encourage a close and continuing relationship between Thomas Topolski and K.T. *See* N.D.C.C. § 14–09–06.2(1)(e).

[¶ 13]   The district court found:

Since the Judgment, in March 2010, Jean has moved her residence nine times. There was a summer flood in 2011, which contributed to some necessity of movement. That event does not, however, in and of itself, adequately justify the number of moves to which K.T. has been required to adjust her life. These moves also involved the participation of three separate gentlemen in K.T.'s life.

These findings touch upon the lack of stability in Jean Topolski's home environment and the interaction and interrelationship between K.T. and individuals with whom Jean Topolski shared a home. *See* N.D.C.C. § 14–09–06.2(1)(d) and (k).

[¶ 14]   The district court found:

One of the moves, from the apartment complex with the fire, June 13, 2012, was due to the discovery of methamphetamine usage and manufacturing in the apartment by Derick Smith (hereinafter Derick), Jean's current husband. Derick plead guilty to possession of drug paraphernalia and manufacturing of drug paraphernalia, both Class C Felonies. (Judicial notice of 51–2012–CR–01359) Jean testified that she had discovered a pipe used by Derick for methamphetamine as early as March of 2013,

but made no attempt to follow-up with that discovery for the safety of K.T.

These findings speak to Jean Topolski's inability to assure K.T. remains in a safe environment, the instability of Jean Topolski's home environment, and the interaction of K.T. with Derick Smith, and raise serious concern with respect to Jean Topolski's moral fitness, as it impacts K.T. *See* N.D.C.C. § 14–09–06.2(1)(b), (d), (f), and (k).

[¶ 15]   The district court found:

On September 13, 2012, there was an incident of domestic violence between Jean and Derick. (Judicial notice of 51–2012–CR–02149) Plaintiff's Exhibit 16 is the Affidavit of Probable Cause for the arrest of Derick. The charge was Simple Assault. Prosecution of this event, however, was not taken to completion. The State's Attorney made a judgment that the victim, Jean, would not be a cooperating witness. The incident was witnessed by K.T.

Due to the incident in September, 2012, three separate entities, the Village Family Service Center, the North Dakota Department of Human Services, and the Ward County Social Service Board, all put together recommendations for planned assistance to serve the needs of this family unit, Derick, Jean, and K.T. The Village put together an Individual Treatment Plan, Plaintiff's Exhibit # 15, for the dates of December 11, 2012, to March 11, 2013. Human Services put together a Care Plan, Plaintiff's Exhibit # 17, beginning in January 2013, and continuing to January 2014. Social Services, on November 1, 2012, found services required as shown in Plaintiff's Exhibit # 18. There is no evidence of these recommendations being fulfilled. Jean has, however, been visiting with her pastor and attending couples counseling with Derick.

These findings pertain to domestic violence in the home Jean Topolski shares with Derick Smith, Jean Topolski's inability to assure K.T. remains in a safe environment, and the potential for further negative interactions between K.T. and Derick Smith. *See* N.D.C.C. § 14–09–06.2(1)(b), (j), and (k).

[¶ 16] Although N.D.C.C. § 14–09–06.2(1)(j) provides for a rebuttable presumption against awarding primary residential responsibility to a parent who perpetrates domestic violence and requires a court to cite "specific findings of fact to show that the residential responsibility best protects the child[,]" this presumption only triggers where "there exists one incident of domestic violence which resulted in serious bodily injury or involved the use of a dangerous weapon or there exists a pattern of domestic violence within a reasonable time proximate to the proceeding. . . ." "Specific factual findings are not required when the evidence of domestic violence does not rise to the level to trigger the domestic violence presumption, but that evidence can still be considered by the court as one of the best interest factors." *Gietzen v. Gabel*, 2006 ND 153, ¶ 9, 718 N.W.2d 552.

[¶ 17] In this case, there was evidence of one incident of domestic violence perpetrated by the spouse of a parent, and that incident did not involve serious bodily injury or the use of a dangerous weapon. Therefore, the presumption could not have been triggered. However, the district court was free to, and did, consider this evidence of domestic violence in its analysis of the best interest factors.

[¶ 18] The district court found:

Thomas has lived in Donnybrook for the past four years. He has been married to Andrea for over three years. Thomas and Andrea have one child together, S.T., two years old. Thomas is in the process of adopting Andrea's son, A.T., six years old. A.T.'s father is deceased. Thomas has been with his current employer for five years and is now a foreman. Andrea is a full time stay at home mother.

These findings relate to the sufficiency and stability of Thomas Topolski's home environment and the interaction and interrelationship between K.T. and Andrea Topolski. *See* N.D.C.C. § 14–09–06.2(1)(d) and (k).

[¶ 19] The district court found:

Thomas has a very close relationship with K.T. Their relationship is loving, happy, and affectionate. Thomas, with the assistance of Andrea, has a stable, safe, and caring environment for K.T. Thomas also has, with the assistance of Andrea, a clear capacity and disposition to continue the educational guidance needed for K.T.

These findings speak to the love, affection, and other emotional ties existing between Thomas Topolski and K.T., Thomas Topolski's ability to ensure K.T. is in a safe environment, the ability of Thomas Topolski to meet K.T.'s developmental needs, the ability of Thomas Topolski to provide a sufficient and stable home environment, and the interaction and interrelationship between K.T. and Andrea Topolski. *See* N.D.C.C. § 14–09–06.2(1)(a), (b), (c), (d), and (k).

[¶ 20] The district court did not, as it should have, clearly specify how its findings relate to the best interest factors which must be considered under N.D.C.C. § 14–09–06.2(1). We do not condone this lack of effort to be specific by the district court in identifying which specific factors were under consideration in making its findings. Nevertheless, the district court's findings were sufficiently detailed to allow this Court to clearly understand the dis-

trict court's basis for the court's primary residential responsibility decision. After reviewing the district court's findings, we are left with the understanding that factors (a), (b), (c), (d), (e), (f), (h), (j), and (k) favor Thomas Topolski. We hold the district court did not err in its application of the best interest factors.

## IV

[¶ 21] Jean Topolski also argues the district court misapplied the law regarding its consideration of pre-divorce conduct of the parties. She argues this Court's case law requires the district court to include an analysis of Thomas Topolski's pre-divorce conduct in the district court's findings of fact, conclusions of law, and order for amended judgment. Specifically, Jean Topolski argues the district court's findings should have included reference to Thomas Topolski's past criminal history.

[¶ 22] In *Wetch v. Wetch*, this Court held:

In deciding a change of [primary residential responsibility] motion, if the previous [primary residential responsibility] placement was based upon the parties' stipulation and not by consideration of the evidence and court made findings, the trial court must consider all relevant evidence, including pre-divorce conduct and activities, in making a considered and appropriate [primary residential responsibility] decision in the best interests of the children.

539 N.W.2d 309, 312–13 (N.D.1995). Under N.D.C.C. § 14–09–06.2(1)(f), one of the best interest factors for the district court to consider is "[t]he moral fitness of the parents, as that fitness impacts the child," and considerations of criminal history fall under this factor. *See Smith v. Martinez*, 2011 ND 132, ¶¶ 12–13, 800 N.W.2d 304.

[¶ 23] While we have held the district court must "consider" pre-divorce conduct in these types of cases, "consider" means only "to think about [something] carefully." *Merriam–Webster's Collegiate Dictionary* 265–66 (11th ed.2003). Requiring a court to consider pre-divorce conduct is not the same as saying a court must give that evidence weight or cite that evidence in its findings of fact. *But cf.* N.D.C.C. § 14–09–06.2(1)(j) (requiring a district court to both "*consider* evidence of domestic violence" and "*cite specific findings of fact* to show that the residential responsibility best protects the child and the parent or other family or household member who is the victim of domestic violence" (emphasis added)). District courts have substantial discretion in making determinations of primary residential responsibility. *Wolt*, 2010 ND 26, ¶ 9, 778 N.W.2d 786. Decisions concerning the weight given to evidence belong to the district court, and this Court does not reweigh evidence. *Marsden v. Koop*, 2010 ND 196, ¶ 23, 789 N.W.2d 531. After considering the pre-divorce conduct of the parties, a district court may decide not to give weight to that conduct or cite that conduct in its findings of fact.

[¶ 24] In this case, the parties' original primary residential responsibility agreement was based on a stipulation, and the district court was therefore required to consider pre-divorce conduct of the parties in reaching its decision. It is clear from the record that the district court received evidence regarding Thomas Topolski's criminal history. At the evidentiary hearing, Thomas Topolski admitted to three felony burglary convictions from 2003, and the district court was provided with the case numbers for those convictions. While the district court was required to "consider" this evidence, it had substantial discretion with regard to the weight given to the evidence and the decision of whether to

include reference to this evidence in the court's findings of fact. The district court ultimately chose not to give weight to these convictions in its written findings of fact, and based on the record, we conclude the district court's decision not to include this information in its findings was not clearly erroneous. *See Glass*, 2011 ND 145, ¶ 11, 800 N.W.2d 691 ("A district court's decision whether to modify primary residential responsibility is a finding of fact which will not be reversed on appeal unless clearly erroneous."). We hold the district court did not err in its application of the law regarding consideration of pre-divorce conduct of the parties to a primary residential responsibility action.

## V

[¶ 25] We affirm the district court judgment.

[¶ 26] GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.