# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2022 ND 155

State of North Dakota, County of Sargent,                                    Plaintiff

    and

Ex Rel, Nicki Erickson,                                    Plaintiff and Appellant

    v.

Tim Faber,                                    Defendant and Appellee

### No. 20210358

Appeal from the District Court of Sargent County, Southeast Judicial District, the Honorable Mark T. Blumer, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court, by Crothers, Justice, in which Chief Justice Jensen, and Justices VandeWalle, McEvers, and Tufte joined. Justice McEvers filed an opinion concurring specially.

Erica L. Chisholm, Wahpeton, ND, for Nicki Erickson, plaintiff and appellant.

Samuel S. Johnson, Wahpeton, ND, for defendant and appellee.

**Crothers, Justice.**

[¶1]   Nicki Erickson appeals from a judgment awarding her and Tim Faber equal residential responsibility of their three children. Erickson argues the district court clearly erred by awarding the parties equal residential responsibility of the children. She also claims the court erred in determining the parties' two youngest children were of sufficient age and maturity to testify about their preferences relating to residential responsibility. We conclude the court did not err by allowing the children to testify on their preferences; however, the court erred by awarding Erickson and Faber equal residential responsibility of their oldest child. We affirm in part, reverse in part and remand.

I

[¶2]   Erickson and Faber have three children together, K.F., born in 2004, M.F., born in 2009, and J.F., born in 2013. The parties lived together in Milnor until 2019, when Erickson and the children moved to Gwinner. In February 2020, Faber sued Erickson seeking equal residential responsibility of the parties' children. In response, Erickson requested primary residential responsibility of the children.

[¶3]   At a September 2021 hearing, the district court received evidence and heard testimony related to the best interest factors under N.D.C.C. § 14-09-06.2(1). The court allowed the children to testify about their preferences relating to residential responsibility. K.F., age 16, testified she wanted to live with Erickson in Gwinner and have the freedom to visit Faber as she pleases. M.F. and J.F., ages 12 and 8, testified they wanted equal time with both parents.

[¶4]   The district court awarded Erickson and Faber equal residential responsibility of the children after analyzing the best interest factors. The court noted that although it awarded the parties equal residential responsibility, K.F. would be allowed to come and go as she chose.

[¶5]   Erickson argues the district court erred in finding M.F. and J.F. were of sufficient age and maturity to testify about their preferences relating to residential responsibility. She also claims the court erred by awarding equal residential responsibility of the children.

[¶6]   A district court's decision on residential responsibility is a finding of fact subject to the clearly erroneous standard of review. *Boldt v. Boldt*, 2021 ND 213, ¶ 8, 966 N.W.2d 897. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence supports it, or if this Court, after reviewing the entire record, is left with a definite and firm conviction a mistake has been made. *Id.* Under the clearly erroneous standard, we do not reassess evidence or the witnesses' credibility or retry a custody case, and we do not substitute our judgment for a court's decision simply because we might have reached a different result. *Solwey v. Solwey*, 2018 ND 82, ¶ 20, 908 N.W.2d 690.

[¶7]   The district court must consider the best interests of the child under N.D.C.C. § 14-09-06.2(1) in awarding residential responsibility. *Hammeren v. Hammeren*, 2012 ND 225, ¶ 6, 823 N.W.2d 482. The best interest factors include: (a) the love, affection, and emotional ties between the parents and child; (b) the parents' ability to provide the child a safe environment; (c) the parents' ability to meet a child's developmental needs; (d) the sufficiency and stability of each parent's home environment; (e) each parent's ability and willingness to encourage a close and continuing relationship with the other parent; (f) the parents' moral fitness; (g) the parents' mental and physical health; (h) the child's home, school, and community record; (i) the child's reasonable preference; (j) evidence of domestic violence, (k) the child's interaction and relationship with another person who resides in or is present in a parent's home; (l) a parent's making of false allegations against the other parent; and (m) other relevant factors. N.D.C.C. § 14-09-06.2(1).

[¶8]   A district court has broad discretion regarding the examination of witnesses, and, if appropriate, a court may refuse to allow a witness to testify. *Solwey*, 2018 ND 82, ¶ 23. A court abuses its discretion if it misinterprets or

2

misapplies the law, it acts in an arbitrary, unreasonable, or unconscionable manner, or its decision is not the product of a rational mental process leading to a reasoned determination. *Wades Welding LLC v. Tioga Properties, LLC*, 2021 ND 214, ¶ 9, 966 N.W.2d 912.

A

[¶9] Erickson asserts the district court erred in finding M.F. and J.F., ages 12 and 8, were of sufficient maturity to testify about their preferences on residential responsibility.

[¶10] Under N.D.C.C. § 14-09-06.2(1)(i), if a district court "finds by clear and convincing evidence that a child is of sufficient maturity to make a sound judgment, the court may give substantial weight to the preference of the mature child." "The court also shall give due consideration to other factors that may have affected the child's preference, including whether the child's preference was based on undesirable or improper influences." *Id.*

[¶11] A child's maturity is a factually driven issue and will depend on the facts and circumstances of the case. *Solwey*, 2018 ND 82, ¶ 20. "The preference of a child who is capable of intelligently choosing between his parents for custody can be significant in determining the best interest of the child, but the child's preference is only one factor to consider and is not usually determinative." *Hammeren*, 2012 ND 225, ¶ 16. "A mature child's preference should be considered by a court, but only if there are persuasive reasons for that preference." *Glass v. Glass*, 2011 ND 145, ¶ 18, 800 N.W.2d 691.

[¶12] The district court explained its decision to allow M.F. and J.F. to testify about their preferences relating to residential responsibility:

> "Okay. I'm going to allow the children to testify. The 16-year-old obviously is of age. The—I've got concerns when, you know, we have younger children, but I think it's important. It's unfortunate they would have to testify in front of their parents, but, you know, over the years there have been many, many trials and difficult situations with young children that have had to testify, and I think this is a situation where it would be good to hear from them. And

3

like I say—like Mr. Johnson says, there would be a few questions, I can consider what they have to say, taking age into account, and their current situations, but I'm going to allow it."

[¶13] After the evidentiary hearing, the district court found in part:

"The children's testimony was not unduly influenced but was free and truthful. All three children are of sufficient maturity to make a sound judgement as to where they want to reside. All three children were able to distinguish between right from wrong and understand the questions that were presented to them. All three children testified that they love both their mom and dad. The two youngest children testified that they want to live with [Erickson] and [Faber] on a week-by-week basis. The parties' two youngest children testified, that when they were living in Milnor, North Dakota and attending school in Gwinner, North Dakota, they had no problems with getting up in the morning and being transported back and forth from school. The parties' youngest child testified that he felt his relationship with [Faber] was 'inseparable.'"

[¶14] The district court considered the children's ages and situations when weighing their testimony. M.F. and J.F. were asked about their school, going back and forth between Gwinner and Milnor and spending time with their parents. The court found M.F.'s and J.F.'s testimony was not influenced and there was no evidence suggesting otherwise. The court did not abuse its discretion by allowing M.F. and J.F. to testify, and the court's findings relating to their preferences on residential responsibility were not clearly erroneous.

B

[¶15] Erickson argues the court clearly erred in its analysis of the best interest factors under N.D.C.C. § 14-09-06.2(1) by awarding equal residential responsibility of M.F. and J.F.

[¶16] The district court found best interest factors (d), (e), (i), (k), and (m) favored Faber. The court found M.F. and J.F. have a close bond with Faber's parents who live near Milnor. The court found M.F. and J.F. would not be negatively affected by residing with Erickson and Faber on a week-by-week basis while continuing to attend school in Gwinner. The court found Erickson

4

restricted Faber's contact with the children after he started dating his current girlfriend. The court found M.F. and J.F. have a close relationship with his girlfriend. The court found M.F. and J.F. have been negatively impacted since they have been living primarily with Erickson. M.F. has been receiving counseling and J.F. struggled at school.

[¶17] The district court's findings on the best interest factors have support in the record, and we are not left with a definite and firm conviction a mistake was made. The court did not clearly err by awarding Erickson and Faber equal residential responsibility of M.F. and J.F.

III

[¶18] Erickson argues the district court clearly erred by awarding the parties equal residential responsibility of the oldest child, K.F. She claims K.F. intended to live primarily with her, and Faber had no intention of forcing K.F. to spend half of her time with him.

[¶19] K.F. testified her preference would be to live primarily with Erickson in Gwinner and have the freedom to visit Faber as she chooses. K.F. was asked, "regardless of whether or not . . . your mom and dad have equal residential responsibility, if you were free to come and go as you please, visit your dad and mom whenever you wanted, would that be okay with you?" K.F. answered, "Yeah."

[¶20] Faber testified he "[didn't] want [K.F.] to be somewhere where she doesn't want to be." He testified K.F. had not stayed overnight with him for about two years.

[¶21] In its analysis of factor (m) and other relevant factors, the district court concluded, "Although the [K.F.] would rather stay with [Erickson] more than [Faber], granting the equal residential responsibility of all of the minor children to [Erickson] and [Faber] on a week-by-week basis, with allowing [K.F.] to come and go as she so chooses would satisfy said child's desire and be consistent with her testimony."

5

[¶22] A district court generally cannot delegate to anyone the power to decide questions of residential responsibility or related issues. *Krueger v. Krueger*, 2011 ND 134, ¶ 16, 800 N.W.2d 296; *Marquette v. Marquette*, 2006 ND 154, ¶ 10, 719 N.W.2d 321. A court may not rely solely on a child's wishes when deciding residential responsibility. *Krueger*, ¶ 13.

[¶23] Here, the district court awarded Faber equal residential responsibility of all three children while allowing K.F. "to come and go as she so chooses." In effect, the court allowed K.F. to choose her own parenting schedule. A mature child may testify on his or her preferences, but the court must decide residential responsibility based on the evidence presented and the best interests of the child. The court erred as a matter of law by awarding Faber equal residential responsibility of K.F.

[¶24] The evidence demonstrates K.F. has lived primarily with Erickson since the move to Gwinner and will continue primarily living with Erickson. We reverse the portion of the judgment awarding Faber equal residential responsibility of K.F. and remand for entry of a modified judgment awarding Erickson primary residential responsibility of K.F., establishing Faber's parenting time, and recalculating child support.

IV

[¶25] We have considered the parties' remaining arguments and conclude they are either without merit or not necessary to our opinion. The judgment is affirmed in part, reversed in part, and remanded.

[¶26] Jon J. Jensen, C.J.
     Gerald W. VandeWalle
     Daniel J. Crothers
     Lisa Fair McEvers
     Jerod E. Tufte

**McEvers, Justice, concurring specially.**

[¶27] I agree and have signed with the majority. In my opinion, the district court did not clearly err in awarding equal residential responsibility of M.F.

and J.F., and did err in awarding joint residential responsibility of K.F. While I might have ruled differently, that is not the standard. I, like the majority, do not have a definite and firm conviction a mistake has been made regarding M.F. and J.F. However, I do not agree with all of the district court's findings, a number of which are not supported by the record.

[¶28] For example, the district court found Faber had put an offer in on a four-bedroom home. Faber, who lives in a two-bedroom apartment with his girlfriend, testified he is trying to get a house, but he did not "dare sign on a house" if he had to start paying $1,400 a month in child support. The court also found both parties attend the children's parent teacher conferences, keep in contact with the children's teachers, and attend the children's extracurricular activities, concluding factor (c) favors neither party. This finding stretches the evidence considerably. The record shows Faber could not name the children's teachers, could not recall the last parent teacher conference he attended, and was not sure what activities the children were participating in. Nonetheless, the findings regarding M.F. and J.F. are substantially supported by the record.

[¶29] The problem lies when the parties use proposed findings as a tool in advocacy rather than accurately portraying the evidence presented at trial, and the court signs them without revision.

> Rule 7.1, N.D.R.Ct., authorizes the district court to assign the preparation of proposed findings of fact and conclusions of law to one or more parties. Although we have expressed disapproval of a district court's wholesale adoption of one party's proposed findings and conclusions, the findings become the court's findings when the court signs the findings. The findings will be upheld if they adequately explain the basis for the court's decision, unless they are clearly erroneous. We will not reverse a district court's decision solely because the court adopts counsel's proposed findings.

*Estate of Albrecht,* 2020 ND 27, ¶ 9, 938 N.W.2d 151 (internal citations omitted). Likewise, as the reversal of the judgment regarding K.F. points out,

7

we will not affirm when the evidence does not support the award of equal residential responsibility.  Majority, at ¶¶ 19-24.

[¶30] I understand that district judges are busy and rely on parties to prepare proposed findings.  But, in my view, the court should make a greater effort to review proposed findings and revise them as necessary to fit the facts presented at trial.

[¶31] Lisa Fair McEvers